PORT HURON AREA SCHOOL DISTRICT v PORT HURON
EDUCATION ASSOCIATION

Docket No. 57986. Submitted June 1, 1982, at Detroit.—Decided
October 5, 1982.

The Port Huron Area School District Board of Education passed a
resolution stating that the school district faced a financial
emergency for the 1979-1980 school year. The resolution was
passed at the urging of the school district superintendent and
was based on a projected budget deficit of $1,427,000. As a
result of the passing of the resolution, many members of the
Port Huron Education Association received layoff notices. The
association filed a grievance alleging that the emergency reso-
lution and subsequent layoffs constituted a violation of the
collective-bargaining agreement between the school district and
the association. The grievance was heard by a three-member
arbitration panel. The school district then exercised its right to
a complete rehearing by filing a complaint in St. Clair Circuit
Court. The court, Halford I. Streeter, J., entered an order
stating that the emergency actions taken by the school district
did not violate the collective-bargaining agreement. The associ-
ation appeals. *Held:*

1. The trial court ruled that a determination of the school
district's financial resources required consideration not only of
the funds available for expenditure by the school district but
also of the projected expenditures or, in other words, that the
term "financial resources" meant the difference between proj-
ected revenues and projected expenses. Such a definition of
"financial resources" is erroneous. The term "financial re-
sources" means funds—assets, expected revenues, etc.—avail-
able for expenditure in a given year. The record shows that
there was no reduction in financial resources under this defini-
tion of "financial resources". The case is reversed and re-
manded for further proceedings.

2. The trial court's calculations showed only a 1% reduction

REFERENCE FOR POINTS IN HEADNOTE
17 Am Jur 2d, Contracts § 252.

in projected resources, even when projected expenses were taken into account. Such a reduction is insubstantial.

3. The trial court did not err in finding that a substantial reduction of student membership had occurred. The substantial reduction in student membership justified the school district's layoff of 41 teachers.

4. The association's claim that the school district should be estopped from asserting that the decline in student enrollment justified its action is rejected.

Reversed and remanded.

Courts will not interpret a contract in a manner which would impose an absurd or impossible condition upon one of the parties.

*Touma, Watson, Nicholson, Fletcher & DeGrow* (by *Gary A. Fletcher*), for plaintiff.

*Levin, Levin, Garvett & Dill* (by *Erwin B. Ellmann, Robert J. Finkel* and *Eli Grier*), for defendant.

Before: Bronson, P.J., and R. M. Maher and M. Warshawsky,* JJ.

R. M. Maher, J. Defendant Port Huron Education Association (PHEA) appeals as of right an order by the circuit court declaring that the emergency actions taken by plaintiff Port Huron Area School District (PHASD) in March, 1979, did not violate the 1978-1980 collective-bargaining agreement between the two parties.

This opinion will address the proper construction of the term "financial resources" in the context of a collective-bargaining agreement.

On March 19, 1979, PHASD Superintendent James Burchyett recommended that the PHASD Board of Education resolve that the district faced a financial emergency for the 1979-1980 school

---

* Circuit judge, sitting on the Court of Appeals by assignment.

year. Accordingly, on March 26, 1979, the board passed such a resolution.

The PHASD's March, 1979, budget estimate for the 1979-1980 school year showed potential operating expenses of $29,115,000 and projected revenues of $27,688,000. Thus, there was a predicted budget deficit of $1,427,000. However, the revenue figures did not include the projected estimate of fund equity—$875,000—remaining after the 1978-1979 school year.

Due to the financial emergency called by the board, many PHEA members received layoff notices dated April 18, 1979. As a result, on May 9, 1979, the PHEA filed a grievance alleging that the emergency resolution and subsequent layoffs constituted a clear violation of art 2, § 3 of the collective-bargaining agreement. The dispute eventually made its way into the court system.

We set forth below the critical language of the collective-bargaining agreement:

"A. *It is recognized that a substantial reduction of student membership or financial resources may occur at any time. Either of these reductions, if substantial, may require a General Staff Reduction.* It is further recognized that while a substantial reduction of student membership will necessitate a General Staff Reduction, such a staff reduction would be proportionate and therefore could be carried out without violation of the class size provisions in Article V, Paragraph I. It is further recognized that a substantial reduction of financial resources could necessitate a General Staff Reduction which would make Article V, Paragraph I, inoperative either in whole or in part.

"B. While a membership or financial emergency may occur at any time the Board's decision to declare an emergency shall be for a specific school year. Continuation of an emergency shall be by Board action.

"C. It is also expressly understood that any and all

initial millage requests by the District during the life of this Agreement will, when combined with state and Federal aid, meet the express terms and conditions of this Agreement." (Emphasis added.)

These provisions define the circumstances under which the PHASD may declare the existence of an emergency. PHASD contends, and the circuit court found, that a substantial reduction of financial resources had occurred. In making this decision, the circuit court ruled that a determination of the PHASD's "financial resources" required consideration not only of the funds available for expenditure by the PHASD, but also of the projected expenditures. In other words, the court concluded that the term "financial resources" meant the difference between projected revenues and projected expenses.

On appeal, PHEA contends that the circuit court's definition of "financial resources" was erroneous. We agree.

We are convinced that the plain meaning of the term "financial resources" is "assets". A "resource" is the amount of a particular commodity available for consumption. If our government expected to have a million barrels of oil available for use by the armed forces in a given year, but expected the army to consume 999,999 barrels, we would be most surprised to hear our government announce that our military oil resources consist of only one barrel of oil. We simply cannot agree with PHASD's contention that "resources" means "surplus".

The circumstances surrounding the agreement provide support for the above conclusion. A reduction in projected surplus would frequently bear little or no relation to the necessity to declare an emergency. For example, if the 1978-1979 surplus

had been $10,000, but the 1979-1980 surplus was estimated at $1,000, did the parties intend that the board should be empowered to lay off personnel? We hardly think so, even though a 90% reduction is surely "substantial".

We hold that the term "financial resources" means the funds—assets, expected revenues, etc.—available for expenditure by the PHASD in a given year. The voluminous collective-bargaining agreement was drafted after lengthy negotiations between two countervailing powers, and we are not convinced that the PHEA would have signed the agreement if the PHASD had insisted upon substituting the term "surplus" for "resources".

The record shows that there was no "reduction in financial resources" under the standard set forth above. We therefore reverse and remand this case to the circuit court for further proceedings in light of this opinion.

PHASD argues that interpretation of the term "financial resources" in the manner urged by the PHEA will impose an absurd or impossible condition on the PHASD. Although courts will not interpret a contract in a manner which would impose an absurd or impossible condition upon one of the parties, *Wembleton Development Co v Travelers Ins Co,* 45 Mich App 168, 172; 206 NW2d 222 (1973), we cannot agree that our interpretation of the contract can be properly characterized as such. The trial court's calculations showed only a 1% reduction in projected resources, even when projected expenses were taken into account. Under the circumstances, we find this reduction insubstantial.

Finally, we reject PHEA's contention that the trial court erred in finding that a substantial reduction of student membership had occurred.

The court properly found that this substantial reduction justified the PHASD's layoff of 41 teachers. PHEA argues that the PHASD should be estopped from asserting that this decline in student enrollment justified its action inasmuch as the board did not assert such a justification when it announced the existence of an emergency. We disagree. The superintendent stated, in his answer to the grievance filed by the PHEA, that the board's action was justified by a substantial reduction in student membership as well as a substantial reduction in financial resources. We find the superintendent's response sufficient to preclude the PHEA's estoppel claim.

Reversed and remanded to the circuit court for further proceedings consistent with this opinion. No costs, neither party having prevailed in full. We do not retain jurisdiction.