AUTO-OWNERS INSURANCE COMPANY v
FERWERDA ENTERPRISES, INC

Docket No. 277574. Submitted October 14, 2008, at Grand Rapids.
Decided April 9, 2009, at 9:05 a.m.

Auto-Owners Insurance Company brought an action in the Mason
Circuit Court, seeking a determination regarding its liability to its
insured, Ferwerda Enterprises, Inc., doing business as Holiday Inn
Express Ludington (Holiday Inn), under a commercial general liabil-
ity insurance policy for injuries sustained by Daryl and Melissa
Bronkema and their three minor children. The Bronkemas were
exposed in Holiday Inn's indoor-pool building to gas from chlorine
and muriatic acid that had formed in the system that filters, heats,
and sanitizes the pool water. Holiday Inn filed a counterclaim,
alleging breach of contract, estoppel, and waiver and seeking attorney
fees and penalty interest. The court, Richard I. Cooper, J., granted
summary disposition in favor of Holiday Inn, determining that the
Bronkemas' personal injury claims fell within the scope of the policy,
specifically the heating equipment exception to the policy's pollution
exclusion. The court entered a judgment in favor of Holiday Inn on its
breach of contract claim and its claim that Auto-Owners owed it a
duty to defend and indemnify against the Bronkemas' underlying
personal injury lawsuit and awarded costs and attorney fees. The
court also awarded the Bronkemas attorney fees and costs and
awarded penalty interest to Holiday Inn and the Bronkemas. Auto-
Owners appealed, and Holiday Inn cross-appealed with regard to the
dismissal of its counterclaims based on waiver and estoppel.

The Court of Appeals held:

1. The language of the entire contract of insurance, including
the building heating equipment endorsement, fairly admits an
interpretation that the building heating equipment language en-
compasses the integrated heating, filtration, and treatment sys-
tem in the Holiday Inn's pool room and an interpretation that it
does not. Because an ambiguity exists, the insurance contract
qualifies as ambiguous, and a fact-finder must ascertain its mean-
ing. The trial court erred by determining as a matter of law that
the building heating equipment endorsement unequivocally pro-
vided coverage under the policy.

2. There is a question of fact to be determined by the fact-finder with regard to whether subsection f(1)(d)(i) of the policy, which excludes coverage in certain situations where pollutants are brought onto the hotel's premises for operational purposes, precludes coverage in this case.

3. There is no merit to Holiday Inn's waiver claim. Holiday Inn cannot establish any reasonable reliance to support its claim that Auto-Owners should be deemed estopped from denying coverage for the Bronkemas' bodily injury claims.

Affirmed in part, reversed in part, and remanded for further proceedings.

O'CONNELL, P.J., dissenting, stated that the endorsement language is not ambiguous and clearly provides coverage under the facts of this case. The orders of the trial court should be affirmed.

*Gross & Nemeth, P.L.C.* (by *James G. Gross*), and *Lincoln G. Herweyer, P.C.* (by *Lincoln G. Herweyer*), for Auto-Owners Insurance Company.

*Varnum, Riddering, Schmidt & Howlett LLP* (by *Mark S. Allard* and *April H. Sawhill*), for Ferwerda Enterprises, Inc.

*Gee & Longstreet LLP* (by *Bruce W. Gee*) for Daryl, Jackson T., Caleb A., Savannah J., and Melissa Bronkema.

Before: O'CONNELL, P.J., and BANDSTRA and GLEICHER, JJ.

GLEICHER, J. In this insurance contract dispute, plaintiff appeals as of right a circuit court order granting defendant Ferwerda Enterprises, Inc. (Holiday Inn), summary disposition of plaintiff's declaratory judgment action. The circuit court also granted Holiday Inn summary disposition with respect to its claim that plaintiff owed it a duty to defend and indemnify against the underlying personal injury lawsuit of defendants Daryl Bronkema, individually and as next friend of Jackson T., Caleb A., and Savannah J. Bronkema,

minors, and Melissa Bronkema. The circuit court then awarded Holiday Inn damages and awarded Holiday Inn and the Bronkemas attorney fees, costs, and penalty interest. We reverse the circuit court's orders with regard to these matters and remand to the circuit court for further proceedings consistent with this opinion.

Holiday Inn cross-appeals as of right the circuit court's order dismissing its counterclaims based on waiver and estoppel. We affirm the circuit court's order dismissing these claims.

### I. UNDERLYING FACTS AND PROCEDURE

The Holiday Inn Express Ludington offers its guests the use of a swimming pool, located in a building attached to the hotel. The equipment used to operate the pool includes a water pump, polyvinyl chloride (PVC) lines that carry pool water to and from the water pump, a boiler that heats the pool water, and a device called a Rola-Chem that dispenses chemicals into the pool water. The pump propels pool water through the PVC lines into the filter and then into the boiler, which heats the water. From the boiler, the warmed water travels to the Rola-Chem, which injects chlorine and muriatic acid, and the pump then pushes the warmed, chemically treated water back into the pool. An affidavit signed by Jeffrey Curtis, Holiday Inn's general manager, describes the mechanical equipment as "an integrated system that filters, heats, and sanitizes the indoor pool water."

The boiler used to heat the pool water serves as the primary source of heat for the entire pool building. Curtis's affidavit explains, "There are no heat ducts from any source in the pool pump room. The sole source of heat for the pump room is the heat given off by the integrated pipe and boiler system." Gerald Gregorski, a mechanical engineer, also supplied an affidavit, which attested that the

pool "lose[s] heat through the processes of convection and evaporation," and as a result heats the air space in the building housing the pool. Gregorski's affidavit continues, "Because of heat loss through convection and evaporation, pools require the use of a heater to maintain a constant water temperature. A system that pumps pool water into a boiler to heat the water and pumps the heated water back into the pool heats the building where the pool is located." Plaintiff retained engineer Michael T. Williams to inspect the Holiday Inn's pool equipment. At his deposition, Williams conceded that "the only source of heat for the pool building at issue in this litigation in the Holiday Inn Express that requires the use of equipment is the heating of the pool water by the boiler in the utility room." Williams expressed that apart from solar heat entering the pool room's windows, he did not know of any source of heat besides the boiler.

On April 9, 2004, an elbow in the PVC line "blew out." A Holiday Inn maintenance man repaired it, but did not turn off the Rola-Chem "feeder system" while completing the repair. Gases created by the continuously flowing chlorine and muriatic acid formed in the PVC lines. When the maintenance man successfully repaired the elbow and powered the system back on, a cloud of the gas traveled through the PVC lines, entered the pool area, and injured the Bronkema family.

Plaintiff filed a declaratory judgment action seeking a determination whether Holiday Inn's insurance policy with plaintiff covered the Bronkemas' claims for personal injuries.[1] Holiday Inn filed a counterclaim alleging

[1] Plaintiff initially paid about $10,000 toward the Bronkemas' medical bills. But after the parties ultimately failed to reach a settlement, the Bronkemas commenced a tort action against Holiday Inn. When plaintiff received the Bronkemas' lawsuit, it concluded that their claims were excluded from coverage pursuant to the policy's pollution exclusion. Plaintiff mailed Holiday Inn a letter containing its opinion that the policy did not

breach of contract, estoppel, and waiver and requesting attorney fees and penalty interest. Pursuant to MCR 2.116(C)(10), plaintiff moved for summary disposition, contending that Holiday Inn's policy did not cover the Bronkemas' injuries. Holiday Inn then filed a cross-motion for partial summary disposition under MCR 2.116(C)(8), (9), and (10), on the basis that an endorsement to the policy's building heating equipment exclusion afforded coverage for the Bronkemas' personal injuries.

The circuit court determined as a matter of law that the Bronkemas' personal injury claims fell within the scope of Holiday Inn's policy with plaintiff, specifically the "heating equipment exception" to the policy's pollution exclusion, and thus granted summary disposition of the declaratory judgment action in favor of Holiday Inn. Ultimately, after multiple summary disposition and other hearings, the circuit court entered a final judgment awarding Holiday Inn nearly $529,000 on its breach of contract claim, granting Holiday Inn more than $186,000 in attorney fees and costs, awarding the Bronkemas more than $71,000 in attorney fees and costs, and granting all defendants "penalty interest pursuant to [MCL 500.2006]."

II. STANDARD OF REVIEW AND GOVERNING LEGAL PRINCIPLES

Because the circuit court considered documentation beyond the pleadings in granting Holiday Inn summary disposition, it appears that the court ruled under MCR 2.116(C)(10), which tests a claim's factual support. This Court reviews de novo a circuit court's summary disposition ruling. *Walsh v Taylor*, 263 Mich App 618, 621; 689 NW2d 506 (2004). "Summary disposition is appropriate under MCR 2.116(C)(10) if there is no genuine issue

cover the Bronkemas' claims, Holiday Inn expressed its disagreement, and plaintiff filed the declaratory judgment action.

regarding any material fact and the moving party is entitled to judgment as a matter of law." *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003). "In reviewing a motion under MCR 2.116(C)(10), this Court considers the pleadings, admissions, affidavits, and other relevant documentary evidence of record in the light most favorable to the nonmoving party to determine whether any genuine issue of material fact exists to warrant a trial." *Walsh, supra* at 621. "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *West, supra* at 183.

"Questions involving the proper interpretation of a contract or the legal effect of a contractual clause are also reviewed de novo." *McDonald v Farm Bureau Ins Co*, 480 Mich 191, 197; 747 NW2d 811 (2008). This Court applies to insurance contracts the same contract construction principles that govern any other type of contract, and thus begins by considering the language of the parties' agreement to determine their intent. *Royal Prop Group, LLC v Prime Ins Syndicate, Inc*, 267 Mich App 708, 714; 706 NW2d 426 (2005).

> Accordingly, an insurance contract should be read as a whole and meaning should be given to all terms. The policy application, declarations page of policy, and the policy itself construed together constitute the contract. The contractual language is to be given its ordinary and plain meaning. An insurance contract must be construed so as to give effect to every word, clause, and phrase, and a construction should be avoided that would render any part of the contract surplusage or nugatory. "[U]nless a contract provision violates law or one of the traditional [contract] defenses to the enforceability of a contract applies, a court must construe and apply unambiguous contract provisions as written." "[T]he judiciary is without authority to modify unambiguous contracts or rebalance the contractual equi-

ties struck by the contracting parties because fundamental principles of contract law preclude such subjective post hoc judicial determinations of 'reasonableness' as a basis upon which courts may refuse to enforce unambiguous contractual provisions." A provision in a contract is ambiguous if it irreconcilably conflicts with another provision, or when it is equally susceptible to more than a single meaning. [*Id.* at 715 (citations omitted).]

### III. THE INSURANCE POLICY

Holiday Inn's form "Commercial General Liability" insurance policy, issued by plaintiff, included the following pollution exclusion:

This insurance does not apply to:

\* \* \*

f. (1) "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants:

(a) At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured;

(b) At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

(c) Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for any insured or any person or organization for whom you may be legally responsible; or

(d) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations:

(i) if the pollutants are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor; or

(ii) if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants.

\*   \*   \*

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

Holiday Inn's policy included an endorsement entitled "Amendment of Pollution Exclusion—Exception for Building Heating Equipment." Prefacing the title appear the words, "This endorsement changes the policy. Please read it carefully." Below the title, the endorsement states, "This endorsement modifies insurance provided under the COMMERCIAL GENERAL LIABILITY COVERAGE FORM." The endorsement deleted subparagraph f(1)(a) of the pollution exclusion, and replaced it with other language:

Under SECTION I—COVERAGES, COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY, 2. Exclusions, exclusion f., subparagraph (1)(a) is deleted and replaced by the following:

This insurance does not apply to:

f. (1) "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants:

(a) At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to any insured. However, this subparagraph, (a), does not apply to "bodily injury" if sustained within a building at such premises, site or location and caused by smoke, fumes, vapor or soot from equipment used to heat a building at such premises, site or location.

IV. ANALYSIS

A. THE BUILDING HEATING EQUIPMENT EXCEPTION

The circuit court ruled as a matter of law that the building heating equipment endorsement unequivocally provided coverage under the policy. In *McGuirk Sand & Gravel, Inc v Meridian Mut Ins Co*, 220 Mich App 347, 354; 559 NW2d 93 (1996), this Court construed an "absolute pollution exclusion" similar to the instant pollution exclusion and observed, "There is a definite national trend to construe such exclusions as clearly and unambiguously precluding coverage for claims arising from pollution. . . . Most courts that have examined similar exclusions have concluded that they are clear and unambiguous and are just what they purport to be—absolute."

Holiday Inn's policy's definition of the term "pollution" contributes to the absolute character of the exclusion, given that it includes any "irritant or contaminant" in liquid, solid, or gaseous form. This broad definition expands the reach of the pollution exclusion well beyond traditional environmental pollutants and includes an enormous variety of substances.[2] However, the instant policy's building heating equipment exception renders the pollution exclusion less "absolute" because it excises the pollution exclusion from the form policy when a person in the insured's building suffers bodily injury "caused by smoke, fumes, vapor or soot from equipment used to heat a building at such premises . . . ." The building heating equipment exception thus serves to resurrect coverage otherwise unavailable under the broad pollution exclusion.

---

[2] In *Western Alliance Ins Co v Gill*, 426 Mass 115, 118-120; 686 NE2d 997 (1997), the Supreme Judicial Court of Massachusetts presented a comprehensive list of the nontraditional "pollutants" that courts have examined under the pollution exclusion, including fumes from new carpeting, odors from cement used to install a plywood floor, and photographic chemicals.

"[E]ndorsements often are issued to specifically grant certain coverage or remove the effect of particular exclusions. Thus, such an endorsement will supercede [sic] the terms of the exclusion in question." 4 Holmes' Appleman on Insurance (2d ed), § 20.1, p 156. "When a conflict arises between the terms of an endorsement and the form provisions of an insurance contract, the terms of the endorsement prevail." *Hawkeye-Security Ins Co v Vector Constr Co*, 185 Mich App 369, 380; 460 NW2d 329 (1990). "[E]ndorsements by their very nature are designed to trump general policy provisions, and where a conflict exists between provisions in the main policy and the endorsement, the endorsement prevails." *Nationwide Mut Ins Co v Schmidt*, 307 F Supp 2d 674, 677 (WD Pa, 2004).

The building heating equipment endorsement extends coverage for bodily injury arising from the discharge or dispersal of pollutants where vapor, smoke or fumes generated by building heating equipment cause an injury. The circuit court determined that the harmful gases in this case emanated from the integrated mechanical system that heated the pool building. Plaintiff endeavors to avoid application of the endorsement by contending that the "chlorine injector (i.e. the Rola-Chem feeder), *not* the pool water heater, was the source of the toxic fumes." (Emphasis in original.) But the evidence, viewed in the light most favorable to Holiday Inn, gives rise to a genuine issue of material fact concerning whether the gases formed within the PVC lines, not within the Rola-Chem feeder, and dispersed only after the maintenance man repowered the entire pool filtration and heating system; when heated water eventually flowed into the pool, the toxic gas accompanied the water.

The circuit court further found that because the pool building's heat derived from the heated water delivered to

the pool through the equipment that leaked the chlorine gas, the pollutant emanated from "equipment used to heat a building." We recognize, as plaintiff maintains, that the building heating equipment endorsement usually applies to pollution occurrences emanating from a furnace. But plaintiff does not dispute that in this case the pool's heating equipment provided the only mechanical source of heat for the pool room. And under the circumstances presented in this case, we find equally plausible that the building heating equipment endorsement applies to the lone mechanical source of heat in Holiday Inn's pool room, specifically the integrated heat, filtration, and treatment system demonstrated by some evidence supplied by Holiday Inn.

In summary, we conclude that in this case the language of the entire contract of insurance, including the building heating equipment endorsement, fairly admits an interpretation that the building heating equipment language encompasses the apparently integrated heating, filtration, and treatment system in Holiday Inn's pool room and an interpretation that it does not. *Raska v Farm Bureau Mut Ins Co of Michigan*, 412 Mich 355, 362; 314 NW2d 440 (1982); *Royal Prop Group, supra* at 715. Because an ambiguity exists with respect to whether the building heating equipment endorsement encompasses the heating, filtration, and treatment system in Holiday Inn's pool room, the parties' insurance contract qualifies as ambiguous, and a fact-finder should ascertain its meaning. *Klapp v United Ins Group Agency, Inc*, 468 Mich 459, 469; 663 NW2d 447 (2003).

### B. INSURANCE POLICY SUBSECTION f(1)(d)(i)

Plaintiff also urges that subsection f(1)(d)(i) excludes coverage under the facts of this case, in which Holiday Inn brought chlorine and muriatic acid, both "pollutants," onto hotel premises for operational purposes. Subsection

f(1)(d)(i) excludes coverage for bodily injury arising from the "actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants":

> (d) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations:
>
> (i) if the pollutants are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor[.]

The pollution exclusion defines "pollutants" as "any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste."

According to plaintiff, the fact that the insured brought the liquid chlorine and muriatic acid onto the premises in connection with the operation of the swimming pool brings into operation the pollution exclusion in subsection f(1)(d)(i). Deposition testimony did support that Holiday Inn purchased large containers of liquid chlorine and muriatic acid to clean its pool. This evidence reasonably tends to establish that Holiday Inn brought to its premises chemicals within the broad policy definition of "pollutants" that ultimately injured the Bronkemas. This situation gives rise to a reasonable inference that the exclusion in f(1)(d)(i) precludes recovery for the Bronkemas' bodily injuries.

Whether substances such as chlorine and muriatic acid generally qualify as pollutants remains a subject of debate in caselaw construing absolute pollution exclusions.[3] But, in this case, a reasonable position also exists

---

[3] For example, in *Pipefitters Welfare Ed Fund v Westchester Fire Ins Co*, 976 F2d 1037, 1043 (CA 7, 1992), the United State Court of Appeals for the Seventh Circuit explored the notion that chlorine could be fairly characterized as a pollutant:

that neither chlorine nor muriatic acid, the liquid "pollutants" that Holiday Inn brought onto its premises, injured the Bronkemas. Some evidence presented to the circuit court reasonably tends to establish that a toxic combination of the two chemicals inside PVC piping yielded a harmful gas that dispersed into the swimming pool area. Under this view of the evidence, the gas or vapor constituted the "pollutant" that caused bodily injury to the Bronkemas.

In summary, a rational person viewing the circumstances of this case in light of the policy language in subsection f(1)(d)(i) could reasonably conclude either that no coverage exists because the Bronkemas suffered injury from pollutants that Holiday Inn brought onto its premises or that plaintiff owes coverage because Holiday Inn did not import onto its premises the toxic gas cloud that injured the Bronkemas. In this situation,

---

Without some limiting principle, the pollution exclusion clause would extend far beyond its intended scope, and lead to some absurd results. To take but two simple examples, reading the clause broadly would bar coverage for bodily injuries suffered by one who slips and falls on the spilled contents of a bottle of Drano, and for bodily injury caused by an allergic reaction to chlorine in a public pool. Although Drano and chlorine are both irritants or contaminants that cause, under certain conditions, bodily injury or property damage, one would not ordinarily characterize these events as pollution.

In *MacKinnon v Truck Ins Exch*, 31 Cal 4th 635, 650; 3 Cal Rptr 3d 228; 73 P3d 1205 (2003), the California Supreme Court observed, "Virtually any substance can act under the proper circumstances as an 'irritant or contaminant.' " Regarding the "absurd results" postulated in *Pipefitters*, the California Supreme Court commented:

The hypothetical allergic reaction to pool chlorine, proposed by the *Pipefitters* court, illustrates this absurdity. Chlorine certainly contains irritating properties that would cause the injury. Its dissemination throughout a pool may be literally described as a dispersal or discharge. Our research reveals no court or commentator that has concluded such an incident would be excluded under the pollution exclusion. [*Id.*]

a fact-finder must make the relevant determination regarding the scope of coverage. *Klapp, supra* at 469.

Holiday Inn contends that the trial court erred by dismissing its estoppel and waiver counterclaims against plaintiff. We consider de novo the application of legal doctrines such as waiver and estoppel. *Madison Dist Pub Schools v Myers*, 247 Mich App 583, 588; 637 NW2d 526 (2001).

Waiver signifies "a voluntary and intentional abandonment of a known right." *Quality Products & Concepts Co v Nagel Precision, Inc*, 469 Mich 362, 374; 666 NW2d 251 (2003). Holiday Inn contends that in denying coverage plaintiff waived any potential reliance on any pollution exclusions apart from subsection f(1)(a), and any right to challenge the applicability of the building heating equipment endorsement. Holiday Inn's argument focuses on a letter written by plaintiff on August 17, 2005, which denied a coverage obligation, specifically quoting pollution exclusion subsections f(1)(a) and (d)(i); advised Holiday Inn that if it disagreed with plaintiff's denial, plaintiff would initiate "a declaratory judgment action"; and concluded with the following language:

> *All rights, terms, conditions and exclusions in your policy are in full force and effect and are completely reserved.* No action by any employee, agent, attorney, or other person on behalf of Auto-Owners Insurance Company; or hired by Auto-Owners Insurance Company on your behalf; shall waive or be construed as having waived any right, term condition, exclusion or any other provision of the policy. [Emphasis added.]

Plaintiff's letter explicitly referenced pollution exclusion subsection f(1)(d)(i), which the circuit court addressed. Furthermore, the clear and unambiguous language emphasized above reflects plaintiff's express reser-

vation of its rights under all provisions of Holiday Inn's policy, and Holiday Inn presented no evidence suggesting that plaintiff ever retreated from this position. We thus reject Holiday Inn's waiver claim as lacking merit.

Holiday Inn lastly suggests that the circuit court should have deemed plaintiff estopped from denying coverage for the Bronkemas' bodily injury claims. Holiday Inn emphasizes on appeal that plaintiff initially paid bodily injury benefits to the Bronkemas and insists that plaintiff undisputedly "failed to give reasonable notice of its defense that the [building heating equipment] Endorsement was inapplicable."

> For equitable estoppel to apply, the [party raising the defense] must establish that (1) the [other party's] acts or representations induced the [party raising the defense] to believe that the pollution exclusion clause would not be enforced and that coverage would be provided, (2) the [party raising the defense] justifiably relied on this belief, and (3) the [party raising the defense] was prejudiced as a result of its reliance on its belief that the clause would not be enforced and coverage would be provided. [*Grosse Pointe Park v Michigan Muni Liability & Prop Pool*, 473 Mich 188, 204; 702 NW2d 106 (2005) (opinion by CAVANAGH, J.).]

Estoppel usually does not expand an insurance policy's express coverage absent egregious, inequitable action by the insurer. *Kirschner v Process Design Assoc, Inc*, 459 Mich 587, 594; 592 NW2d 707 (1999).

In light of plaintiff's clear and unambiguous explanation of the bases for its denial of coverage and its reservation of rights with respect to other policy provisions, we reject that Holiday Inn can establish any reasonable reliance in this case. The August 2005 letter clearly placed Holiday Inn, from the outset of this litigation, on notice of plaintiff's belief that the pollution exclusion provisions precluded recovery arising from the Bronkemas' bodily injuries. Furthermore, plaintiff's initial payment of the Bronkemas' medical bills does not

alter our analysis because "[t]he fact that an insurer has paid some benefits to an insured party does not preclude it from later asserting that it owes nothing" when a lawsuit over coverage arises. *Calhoun v Auto Club Ins Ass'n*, 177 Mich App 85, 89; 441 NW2d 54 (1989).

Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

BANDSTRA, J., concurred.

O'CONNELL, P.J. (*dissenting*). I respectfully dissent.

The majority determines that the endorsement to the Holiday Inn's insurance policy is ambiguous. I disagree. In my opinion, the endorsement is well written and perfectly clear. The endorsement provides coverage for bodily injury caused by smoke or fumes from equipment used to heat a building. All parties to this action agree that the boiler and the attachments to the boiler were used to heat the pool building. The parties also agree that smoke, fumes, or vapor from this heating unit and its attachments may have been responsible for the bodily injury sustained by the individual defendants. Applying the endorsement language to the facts of this case, it is clear that insurance coverage exists for fumes or vapor emanating from this heating unit.[1] I would affirm and adopt as my own the learned decision of the trial court.

---

[1] One issue presented to this Court is whether cleaning agents such as chlorine, muriatic acid, bleach detergents, drain cleaner, or other types of disinfectants are pollutants within the meaning of the Holiday Inn's commercial insurance policy. I conclude that this issue is not outcome-determinative in this case and its resolution is best left for another day. However, I agree with the majority's statement in footnote 3 of its opinion and the indication that to date no court has classified chlorine as a pollutant when it has been used to clean swimming pools. I concur with the majority's opinion that the context in which a product is used may be useful in determining whether the product is a pollutant. Stated another way, the use of a product may make the terms of an insurance contract ambiguous to the ordinary reader.

The conceptual difficulty that bedevils presentation of this issue in the present case is attributable to the use of the term "pollutant" in the insurance policy and the common understanding of that term among most people in our society. In particular, the use of this term in the contract leads to a deceptively simple question: What is a pollutant? In this case, the insurance policy provides a definition: "pollutants" are "any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed." But this definition merely requires us to re-pose our original question and ask, What is an irritant or a contaminant?

Years ago, this Court, referencing an opinion by the United State Supreme Court, stated:

> The phenomenon of identical words meaning different things, even in a single document, such as an insurance contract or statute, let alone in two separate documents, is neither unique to the case at bar nor to the elasticity and inherent limitations of the English language. *Nat'l Organization for Women, Inc v Scheidler*, [510] US [249, 258]; 114 S Ct 798; 127 L Ed 2d 99, 109 (1994) (recognizing that the statutory term "enterprise" in 18 USC 1962 [a] and [b] does not import an economic motive that is required in conjunction with the term "enterprise" in [18 USC] 1962[c] because "enterprise" was used in two different senses in the different subparagraphs). [*Cavalier Mfg Co v Employers Ins of Wausau*, 211 Mich App 330, 341; 535 NW2d 583 (1995).]

The fact that one word may have multiple meanings depending on its use only adds to the confusion. Moreover, lower courts have been instructed to discern the meaning of a word by examining it carefully in its proper context. In *Tyler v Livonia Pub Schools*, 459 Mich 382, 390-391; 590 NW2d 560 (1999), our Supreme Court stated:

> Contextual understanding of statutes is generally grounded in the doctrine of *noscitur a sociis*: "[i]t is known from its associates," see Black's Law Dictionary (6th ed), p 1060. This doctrine stands for the principle that a word or phrase is given meaning by its context or setting. *State ex el Wayne Co Prosecutor v Diversified Theatrical Corp*, 396 Mich 244, 249; 240 NW2d 460 (1976), quoting *People v Goldman*, 7 Ill App 3d 253, 255; 287 NE2d 177 (1972).[9]

---

[9] United States Supreme Court Justice Antonin Scalia has clarified the meaning of this rule by the example he uses in his recent book, *A Matter of Interpretation*. We repeat it here: "If you

tell me, 'I took the boat out on the bay,' I understand 'bay' to mean
one thing; if you tell me, 'I put the saddle on the bay,' I understand
it to mean something else." (Princeton, New Jersey: Princeton
University Press, 1997), p 26.

The idea of a word meaning something different in light of the surround-
ing language relates closely to the issue raised by this case: In what
context is a chemical a pollutant? By defining a pollutant as an irritant or
a contaminant, the insurance policy links a chemical's status as a
pollutant with its desirability in a particular context. But this definition
leads to yet another question: Is it possible to define a product as a
pollutant for some purposes and as a non-pollutant for other purposes?
The insurance policy precludes insurance coverage if "the pollutants are
brought on or to the premises, site or location in connection with such
operations by such insured, contractor or subcontractor." But is a
chemical that is brought to the premises for a desired purpose a
"pollutant"? When does a chemical become a pollutant?

I offer this example. Under some insurance policies, fluoride would
be considered a pollutant. If fluoride were dumped in large quantities
into a stream, lake, or unapproved landfill, state and federal agencies
would complain, the guilty party would be prosecuted, and any
insurance policy would exclude coverage for the resulting harm to the
environment. In this case, fluoride would be a contaminant. However,
if a city or municipality were to add fluoride to its municipal water
system, few people would claim that the city or municipality had
polluted the drinking water supply, even though cities are prohibited
from adding pollutants to drinking water. In certain amounts and
among certain populations, the addition of this chemical into the
water serves a purpose (preventing tooth decay) and is desired.
Flouride, in this situation, would not contaminate the water supply
and would not be a pollutant.

A similar situation exists in this case. The Holiday Inn typically added
chlorine to pool water to serve as a disinfectant. The chlorine did not
contaminate the water, because its presence served a purpose and was
desirable. However, if water containing the same concentration of chlo-
rine were served to guests to drink, that water would be considered
contaminated and, therefore, polluted, because it contained a substance
that was not desired for the water's intended purpose, namely, drinking.
The question whether this water is contaminated and, therefore, polluted
depends on the surrounding circumstances. Accordingly, the term "pol-
lutant" is ambiguous under the terms of this policy.

### I. ENDORSEMENT LANGUAGE

The Holiday Inn's insurance policy included an endorsement entitled, "Amendment of Pollution Exclusion—Exception for Building Heating Equipment." Prefacing the title appear the words, "This endorsement changes the policy. Please read it carefully." Below the title, the endorsement states, "This endorsement modifies insurance provided under the COMMERCIAL GENERAL LIABILITY COVERAGE FORM." The endorsement deleted subparagraph f(1)(a) of the pollution exclusion provision and replaced it with other language:

> Under SECTION I—COVERAGES, COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY, 2. Exclusions, exclusion f., subparagraph (1)(a) is deleted and replaced by the following:

> This insurance does not apply to:

> f. (1) "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants:

> (a) At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to any insured. However, this subparagraph, (a), does not apply to "bodily injury" if sustained within a building at such premises, site or location and caused by smoke, fumes, vapor or soot from equipment used to heat a building at such premises, site or location.

### II. FACTS

As the majority states in its opinion, the

> boiler used to heat the pool water serves as the primary source of heat for the entire pool building. Curtis's affidavit explains, "There are no heat ducts from any source in the pool pump room. The sole source of heat for the pump room is the heat given off by the integrated pipe and boiler

system." Gerald Gregorski, a mechanical engineer, also supplied an affidavit, which attested that the pool "lose[s] heat through the processes of convection and evaporation," and as a result heats the air space in the building housing the pool. Gregorski's affidavit continues, "Because of heat loss through convection and evaporation, pools require the use of a heater to maintain a constant water temperature. A system that pumps pool water into a boiler to heat the water and pumps the heated water back into the pool heats the building where the pool is located." Plaintiff retained engineer Michael T. Williams to inspect the Holiday Inn's pool equipment. At his deposition, Williams conceded that "the only source of heat for the pool building at issue in this litigation in the Holiday Inn Express that requires the use of equipment is the heating of the pool water by the boiler in the utility room." Williams expressed that apart from solar heat entering the pool room's windows, he did not know of any source of heat besides the boiler. [*Ante* at 245-246.]

### III. CONCLUSION

Endorsement f(1)(a) of the modified pollution exclusion provision clearly provides coverage if bodily injury is "caused by smoke, fumes, vapor or soot from equipment used to heat a building at such premises, site or location." The facts indicate that the boiler and attachments used to heat the pool constituted the sole heating unit for the pool building and, therefore, was "equipment used to heat [the] building." In my opinion, the endorsement provided coverage for this unfortunate occurrence.[2]

---

[2] Plaintiff also argues that subsection f(1)(d)(i) excludes coverage under the facts of this case because the Holiday Inn brought chlorine and muriatic acid, which it claims are both "pollutants," onto the hotel premises for operational purposes. Although these chemicals add a different dimension to the equation, their presence is not outcome-determinative to this issue. All parties appear to agree that if smoke, vapor, or fumes had emanated from a traditional heating unit (such as a

## I would affirm the orders of the trial court.

regular boiler or furnace) instead of a boiler used to heat a pool, coverage would exist under the policy. In my opinion, this is a distinction without a difference. Both the furnace and the boiler require either gas or fuel oil to operate efficiently. This endorsement would nullify itself if plaintiff were allowed to disclaim coverage because the Holiday Inn brought gas or fuel oil (which could also be considered pollutants) onto the hotel premises for operational use. The chemicals did not cause the injury; rather, the fumes emanating from the heating unit did.

Also, I note that if an endorsement is in conflict with an exclusion, the terms of the endorsement prevail. As the majority states in its opinion:

> [E]ndorsements often are issued to specifically grant certain coverage or remove the effect of particular exclusions. Thus, such an endorsement will supercede [sic] the terms of the exclusion in question. When a conflict arises between the terms of an endorsement and the form provisions of an insurance contract, the terms of the endorsement prevail. [Endorsements] by their very nature are designed to trump general policy provisions, and where a conflict exists between provisions in the main policy and the endorsement, the endorsement prevails. [*Ante* at 252 (quotation marks and citations omitted).]

In my opinion, the endorsement prevails over the exclusion in subsection f(1)(d)(i).