HASTINGS MUTUAL INSURANCE COMPANY v SAFETY KING, INC

Docket Nos. 286392 and 286601. Submitted November 9, 2009, at Detroit. Decided November 24, 2009, at 9:15 a.m.

Hastings Mutual Insurance Company brought an action in the Oakland Circuit Court against Safety King, Inc., and Deborah and Michael Mastrogiovanni, individually, and Deborah Mastrogiovanni, as next friend of Michael Mastrogiovanni, a minor, seeking a declaratory judgment regarding its duty to defend and indemnify Safety King, its insured under a commercial general liability policy, with respect to underlying claims brought by the Mastrogiovanni defendants against Safety King for damages allegedly resulting from Safety King's use of a sanitizing agent, the pesticide triclosan, during air duct cleaning services performed in the Mastrogiovanni defendants' home. Safety King brought a counterclaim against Hastings, requesting declaratory relief and asserting claims of breach of contract, fraudulent inducement, negligent misrepresentation, and innocent misrepresentation. Hastings moved for summary disposition on the basis of, in part, the pollution exclusion provisions of the insurance contract. The trial court, Rae Lee Chabot, J., granted summary disposition in favor of Hastings with regard to its action for a declaratory judgment and Safety King's counterclaim, determining that the alleged damages were caused by a pollutant as defined by the terms of the policy and that the pollution exclusion applied. Safety King and the Mastrogiovanni defendants appealed, and their appeals were consolidated.

The Court of Appeals *held*:

1. The definition of a "pollutant" in the policy does not include a "pesticide." Instead, the defining characteristic of a "pollutant" under the policy is that it is an "irritant" or "contaminant." Illustrative examples of potential types of irritants or contaminants given in the policy include "smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste." The policy does not define the terms "irritant" and "contaminant," but the terms are not ambiguous. There is only one reasonable interpretation for each term when they are considered in accordance with their commonly used meanings and in the particular context of being in a pollution

exclusion clause in an insurance contract. A "pollutant" is any solid, liquid, gaseous, or thermal substance that, because of its nature and under the particular circumstances, is generally expected to cause injurious or harmful effects to people, property, or the environment, i.e., an irritant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals, and waste. A "pollutant" is also any solid, liquid, gaseous, or thermal substance that, because of its nature and under the particular circumstances, is not generally supposed to be where it is located and causes injurious or harmful effects to people, property, or the environment, i.e., a contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals, and waste.

2. Hastings did not establish that triclosan is a pollutant. There is a genuine issue of material fact whether triclosan is a pollutant under the terms of the policy. Hastings, at a minimum, had a duty to defend Safety King against the claims in the underlying action because they arguably came within the policy coverage. The order granting summary disposition with regard to the declaratory judgment action and the counterclaim must be reversed and the case must be remanded for further proceedings.

Reversed and remanded.

INSURANCE — POLLUTION EXCLUSIONS — WORDS AND PHRASES — POLLUTANTS.

A "pollutant," for purposes of a pollution exclusion clause in a commercial general liability insurance policy that defines "pollutants" as "any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste" and that does not define an "irritant" or "contaminant," is any solid, liquid, gaseous, or thermal substance that, because of its nature and under the particular circumstances, is generally expected to cause injurious or harmful effects to people, property, or the environment, or is not generally supposed to be where it is located and causes injurious or harmful effects to people, property, or the environment.

*Kallas & Henk PC* (by *Constantine N. Kallas* and *Michele L. Riker-Semon*) for Hastings Mutual Insurance Company.

*Mantese and Rossman, P.C.* (by *Gerard V. Mantese* and *Ian M. Williamson*), for Safety King, Inc.

*Paluda Smolek, P.C.* (by *Andrew J. Paluda* and *Jeffrey A. Smolek*), for the Mastrogiovanni defendants.

Before: STEPHENS, P.J., and CAVANAGH and OWENS, JJ.

CAVANAGH, J. Defendant Safety King, Inc. (Safety King), and defendants Deborah and Michael Mastrogiovanni, individually, and Deborah Mastrogiovanni, as next friend of Michael Mastrogiovanni, a minor (the Mastrogiovanni defendants), appeal as of right an order granting summary disposition in favor of plaintiff Hastings Mutual Insurance Company (Hastings) in this insurance dispute. We reverse.

Safety King was insured under a commercial general liability policy issued by Hastings when the Mastrogiovanni defendants sued Safety King for damages allegedly resulting from Safety King's use of a sanitizing agent during air duct cleaning services performed in their home. Hastings initially defended Safety King under a reservation of rights, but then filed this action for a declaratory judgment. Hastings alleged that, because of the policy's pollution exclusion provision, it owed no duty to defend and indemnify Safety King with respect to the Mastrogiovanni defendants' claims. In response to the declaratory judgment action, Safety King brought a counterclaim against Hastings requesting declaratory relief and asserting claims of breach of contract, fraudulent inducement, negligent misrepresentation, and innocent misrepresentation.

Hastings filed motions for summary disposition under MCR 2.116(C)(10) with regard to both actions. Hastings argued that the Mastrogiovanni defendants' claims arose from Safety King's application of a sanitizing agent to their ductwork. The active ingredient of the sanitizing agent used is triclosan, a pesticide. Hastings argued that because pesticides qualify as "pollutants" under pollution exclusion provisions, coverage under the policy was precluded and Hastings was en-

titled to summary disposition of its declaratory judgment action. Further, Hastings argued, because neither fraud nor misrepresentations were involved in the issuance of the insurance policy, it was also entitled to summary dismissal of Safety King's counterclaim.

Safety King and the Mastrogiovanni defendants opposed Hastings' motion for summary disposition of the declaratory judgment action, arguing that a "pollutant" was not involved in the underlying lawsuit but, if a pollutant were involved, it was not used in the manner proscribed by the policy and, further, an exception to the pollution exclusion clause applied under the facts of this case. Safety King also opposed Hastings' motion for summary dismissal of its counterclaim, arguing that it was premised on Hastings' failure to provide comparable insurance coverage as requested and promised. Thus, defendants argued, Hastings was not entitled to summary dismissal of either action.

Following oral arguments, the trial court agreed with Hastings and granted the motions. In a clarifying order, the trial court quoted the policy's definition of "pollutant" and held:

> There can be no dispute that the damages alleged in the underlying action are alleged to have been caused by a pollutant as defined by the terms of the policy. Thus, coverage is excluded by the terms of the policy, and Plaintiff's motion for summary disposition is properly granted.

Both Safety King and the Mastrogiovanni defendants appealed and the appeals were consolidated pursuant to an unpublished order of the Court of Appeals, entered July 30, 2008 (Docket Nos. 286392, 286601).

On appeal, Safety King and the Mastrogiovanni defendants argue that a "pollutant" did not cause the damages claimed by the Mastrogiovanni defendants in the underlying lawsuit; thus, Hastings had a duty to

defend and indemnify Safety King in that matter and the trial court's holding to the contrary was erroneous. We agree.

This Court reviews de novo a trial court's decision on a motion for summary disposition. *Spiek v Dep't of Transportation*, 456 Mich 331, 337; 572 NW2d 201 (1998). A motion for summary disposition under MCR 2.116(C)(10) is properly granted if no factual dispute exists, thus entitling the moving party to judgment as a matter of law. *Rice v Auto Club Ins Ass'n*, 252 Mich App 25, 30-31; 651 NW2d 188 (2002). In deciding a motion brought under subrule (C)(10), a court considers all the evidence, affidavits, pleadings, and admissions in the light most favorable to the nonmoving party. *Id.* We also review de novo issues of contract interpretation. *Rory v Continental Ins Co*, 473 Mich 457, 464; 703 NW2d 23 (2005).

"Interpretation of an insurance policy ultimately requires a two-step inquiry: first, a determination of coverage according to the general insurance agreement and, second, a decision regarding whether an exclusion applies to negate coverage." *Auto-Owners Ins Co v Harrington*, 455 Mich 377, 382; 565 NW2d 839 (1997). The issue in this case involves the second step of the inquiry: whether the pollution exclusion clause applied to negate coverage otherwise provided with regard to the damage claims made by the Mastrogiovanni defendants against Safety King. For the exclusion to apply, a "pollutant" must be involved. The insurance policy defines "pollutants" as "any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste."

The same contract construction principles apply to insurance policies as to any other type of contract because it is an agreement between the parties. *Rory,*

*supra* at 461; *Auto-Owners Ins Co v Churchman*, 440 Mich 560, 566; 489 NW2d 431 (1992). Thus an insurance policy must be read as a whole to determine and effectuate the parties' intent. *McKusick v Travelers Indemnity Co*, 246 Mich App 329, 332; 632 NW2d 525 (2001). The terms of the contract are accorded their plain and ordinary meaning. *Rory, supra* at 464. If the contractual language is unambiguous, courts must interpret and enforce the contract as written because an unambiguous contract reflects the parties' intent as a matter of law. *In re Smith Trust*, 480 Mich 19, 24; 745 NW2d 754 (2008). Clear and specific exclusionary provisions must be given effect, but are strictly construed against the insurer and in favor of the insured. *Churchman, supra* at 567.

The record evidence shows that Safety King was in the business of providing air duct cleaning services and provided such services to the Mastrogiovanni defendants. During the course of performing those services, Safety King applied a sanitizing agent, Aeris-Guard Advanced Duct and Surface Treatment, to the Mastrogiovanni defendants' ductwork. The active ingredient in Aeris-Guard Advanced Duct and Surface Treatment is triclosan, which is an antimicrobial pesticide. In support of its motions for summary disposition, Hastings argued, as it does here, that our Supreme Court, in *Protective Nat'l Ins Co of Omaha v Woodhaven*, 438 Mich 154; 476 NW2d 374 (1991), "determined that pesticides qualify as a pollutant under the pollution exclusion provisions." Without any other discussion or explanation regarding why triclosan should be considered a "pollutant," Hastings claims that "[t]here is no question that the duct sanitizing by Safety King falls under the pollution exclusion." Apparently, because triclosan is considered a "pesticide," Hastings' position

is that it is then also unquestionably a "pollutant" under the terms of its insurance policy.

Safety King and the Mastrogiovanni defendants argue, however, that triclosan is not a substance to which the pollution exclusion clause applies because it is not a "pollutant." They argue that triclosan is a ubiquitous antimicrobial agent found in a variety of cosmetic and personal hygiene products. Triclosan targets bacteria and dental plaque and is used in various products including, for example, soaps, skin cleaning agents, deodorants, shaving gel, toothpaste, mouthwash, dental cement, surgical sutures, cosmetics, and air duct treatments. They argue that, because triclosan is commonly used in products that are applied directly to human skin and, in many cases, within the mouth, Safety King's use of a triclosan-containing product did not implicate the pollution exclusion. It simply is not a "pollutant."

The trial court without analysis, and after merely quoting the definition of "pollution" contained in the policy, agreed with Hastings, holding: "There can be no dispute that the damages alleged in the underlying action are alleged to have been caused by a pollutant as defined by the terms of the policy." We cannot agree that the issue is that basic or the answer that obvious. The definition of "pollutant" does not include "pesticide." Instead, the defining characteristic of a "pollutant" under this policy is that it is an "irritant" or "contaminant." Illustrative examples of potential types of irritants and contaminants are set forth as including "smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste" without further qualification or limitation.[1]

---

[1] All "smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste" are not necessarily irritants and contaminants; accordingly, they are characterized here as "potential types of irritants and contaminants." For example, vinegar is comprised of acetic acid and table salt is sodium

The terms "irritant" and "contaminant," however, are not defined by the policy. We turn to their dictionary definitions to ascertain the plain and ordinary meaning of these terms as they would appear to a reader of the contract. See *Rory, supra* at 464; *Coates v Bastian Bros, Inc,* 276 Mich App 498, 504; 741 NW2d 539 (2007). An "irritant" is defined as "tending to cause irritation," and "a biological, chemical, or physical agent that stimulates a characteristic function or elicits a response, esp. an inflammatory response." *Random House Webster's College Dictionary* (1997). Thus, the definition of "irritant" connotes a substance that, because of its nature and under the particular circumstances, is generally expected to cause a response. A "contaminant" is defined as "something that contaminates." *Id.* And, "contaminate" means "to make impure or unsuitable by contact or mixture with something unclean, bad, etc.," and "something that contaminates or carries contamination." *Id.* Thus, the definition of "contaminant" connotes a substance that, because of its nature and under the particular circumstances, is not generally supposed to be where it is located and causes undesirable effects.

But contractual terms must be construed in context and in accordance with their commonly used meanings. *Henderson v State Farm Fire & Cas Co,* 460 Mich 348, 354; 596 NW2d 190 (1999). Here, the terms "irritant" and "contaminant" are used to define "pollution" in a pollution exclusion clause, a provision in an insurance policy that limits the scope of liability coverage for damage claims. Considered in this context, an "irritant" is a substance that, because of its nature and under the particular circumstances, is generally expected to cause

chloride but they are not necessarily "pollutants." Similarly, water and oxygen are not necessarily "pollutants."

injurious or harmful effects to people, property, or the environment. And, considered in context, a "contaminant" is a substance that, because of its nature and under the particular circumstances, is not generally supposed to be where it is located and causes injurious or harmful effects to people, property, or the environment.

In this case, Hastings has failed to establish that Safety King's use of a "pollutant" gave rise to the damage claims asserted by the Mastrogiovanni defendants. Specifically, Hastings did not prove that triclosan is an irritant or contaminant. Rather, the evidence set forth by Safety King showed that triclosan was supposed to be where it was located, i.e., in ductwork, and that it is *not* generally expected to cause injurious or harmful effects to people. Accordingly, Hastings' motion for summary disposition of its declaratory judgment action should have been denied.

Hastings' reliance on the holding of *Protective Nat'l* to support its apparent claim that all pesticides are "pollutants" is misplaced. In that declaratory judgment action, the defendant city of Woodhaven had sprayed a chemical pesticide as part of its service to control insects and pests and a third party brought an action for damages allegedly sustained as a result of being exposed to the pesticide. *Protective Nat'l, supra* at 156. The defendant's insurer claimed that the insurance policy's pollution exclusion clause was applicable, relieving it of its duty to defend or indemnify the city. *Id.* at 157. But whether the pesticide used was, in fact, a "pollutant" to which the pollution exclusion clause applied was not at issue or contested. The evidence of record in that case, as noted by the majority opinion, clearly proved that the specific pesticide at issue was an "irritant, contaminant or pollutant." *Id.* at 163-166. However, in our case, the

record evidence did not prove that the specific pesticide at issue, triclosan, is an irritant or contaminant. And we reject Hastings' contention that all pesticides are necessarily "pollutants" under their policy terms. Many homemade pesticides, for example, which use dishwashing detergent or pureed garlic as their active ingredient would not typically be considered "pollutants."

We recognize that many jurisdictions have considered the definition of "pollutant" in the same or very similar pollution exclusion clauses and found it ambiguous, particularly because of the use of the undefined terms "irritant" and "contaminant." Some courts have noted that these terms are vague, in that they are susceptible to more than one meaning, and broad, in that they are virtually boundless because no substance in the world would not irritate or damage some person or property.[2] Some courts have questioned whether the terms refer to (1) substances that ordinarily irritate or contaminate, (2) substances that have, in fact, irritated or contaminated under the particular circumstances regardless of their tendency to do so, or (3) both. Examples are often cited to illustrate the confusion. Fluoride would be considered a "contaminant" if it was dumped in large quantities into a stream without proper approvals, but it would not be a "contaminant" if a municipality properly added it to drinking water to promote oral health. *Auto-Owners Ins Co v Ferwerda Enterprises, Inc*, 283 Mich App 243, 260 n 1; 771 NW2d 434 (2009) (dissenting opinion by O'CONNELL, P.J.),

---

[2] See, e.g., *Nautilus Ins Co v Jabar*, 188 F3d 27, 30-31 (CA 1, 1999); *Regional Bank of Colorado, NA v St Paul Fire & Marine Ins Co*, 35 F3d 494, 498 (CA 10, 1994); *Sargent Constr Co, Inc v State Auto Ins Co*, 23 F3d 1324, 1327 (CA 8, 1994); *Regent Ins Co v Holmes*, 835 F Supp 579, 581-582 (D Kan, 1993); see, also, *Auto-Owners Ins Co v Ferwerda Enterprises, Inc*, 283 Mich App 243, 258-260 n 1; 771 NW2d 434 (2009) (dissenting opinion by O'CONNELL, P.J.), rev'd 485 Mich 905 (2009).

rev'd 485 Mich 905 (2009). Chlorine added as a disinfectant in a public pool would not usually be considered a "contaminant," but chlorine added in the same concentration in someone's drinking water would be a "contaminant." *Id.* Similarly, chlorine used as a disinfectant in a public pool would not ordinarily be considered an irritant, although it could cause an allergic reaction in some people. *Nautilus Ins Co v Jabar,* 188 F3d 27, 30-31 (CA 1, 1999). But contract terms should not be considered in isolation and contracts are to be interpreted to avoid absurd or unreasonable conditions and results. See *Knox v Knox,* 337 Mich 109, 120; 59 NW2d 108 (1953), quoting 12 Am Jur, p 848; *Port Huron Area School Dist v Port Huron Ed Ass'n,* 120 Mich App 112, 116; 327 NW2d 413 (1982).

We conclude that the contract terms at issue here are not ambiguous. There is only one reasonable interpretation of each term when they are considered in accordance with their commonly used meanings and in the particular context of being in a pollution exclusion clause in an insurance policy. See *Henderson, supra* at 354. A "pollutant" is "any solid, liquid, gaseous or thermal" substance that, because of its nature and under the particular circumstances, is generally expected to cause injurious or harmful effects to people, property, or the environment, i.e., an irritant, "including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste." A "pollutant" is also "any solid, liquid, gaseous or thermal" substance that, because of its nature and under the particular circumstances, is not generally supposed to be where it is located and causes injurious or harmful effects to people, property, or the environment, i.e., a contaminant, "including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste." In this case, Hastings did not establish that triclosan is a pollutant.

Our interpretation of this pollution exclusion clause is also cognizant of, and consistent with, the longstanding principle that

[i]n construing [contractual provisions] due regard must be had to the purpose sought to be accomplished by the parties as indicated by the language used, read in the light of the attendant facts and circumstances. Such intent when ascertained must, if possible, be given effect and must prevail as against the literal meaning of expressions used in the agreement. [*W O Barnes Co, Inc v Folsinski*, 337 Mich 370, 376-377; 60 NW2d 302 (1953).]

The purpose of insurance is to insure. *Shumake v Travelers Ins Co*, 147 Mich App 600, 608; 383 NW2d 259 (1985). "Commercial general liability policies are designed to protect the insured against losses to third parties arising out of the operation of the insured's business." 9A Couch on Insurance, 3d, § 129:2, p 129-7. Safety King is in the air duct cleaning business and has been for many years. It not only admits using deodorizing and sanitizing agents as a part of the duct cleaning services it provides, it vigorously advertises that service as a primary marketing incentive. Thus, Hastings knew or should have known about this normal business practice of using deodorizing and sanitizing agents and would have clearly, specifically, and definitively excluded liability coverage for such practice if that was its intention. Likewise, because it was Safety King's normal business practice to use deodorizing and sanitizing agents, it would have reasonably expected coverage for damage claims arising out of the use of deodorizing and sanitizing agents.

Accordingly, Hastings' motion for summary disposition with regard to its declaratory judgment action should have been denied and the trial court's decision to the contrary is reversed. There is, at least, a genuine

issue of material fact regarding whether triclosan is a pollutant under the terms of the policy. Therefore, Hastings, at minimum, had a duty to defend Safety King against the Mastrogiovanni defendants' claims because they arguably came within the policy coverage. See *Radenbaugh v Farm Bureau Gen Ins Co of Michigan*, 240 Mich App 134, 137-138; 610 NW2d 272 (2000). In light of our holding, we need not consider the other issues, which were not reached by the trial court, regarding the pollution exclusion clause or the application of the heating equipment exception raised by Safety King and the Mastrogiovanni defendants.

Next, Safety King argues that the trial court erroneously granted Hastings' motion for summary dismissal of Safety King's counterclaim. We agree. The trial court did not set forth any justification for its decision to dismiss the counterclaim and we are unable to discern whether the trial court actually even considered the matter. Therefore, the decision to dismiss Safety King's counterclaim is reversed and the matter is remanded to the trial court for further proceedings.

Reversed and remanded for further proceedings. We do not retain jurisdiction.