*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

MATTHEWS-HARGREAVES CHEVROLET, CO.,

        Plaintiff-Appellee,

v

ANTHONY DESANTIS,

        Defendant-Appellant.

UNPUBLISHED
May 23, 2024

No. 365052
Macomb Circuit Court
LC No. 2021-002278-CB

Before: GARRETT, P.J., and SERVITTO and REDFORD, JJ.

PER CURIAM.

In this business action alleging breach of a noncompete agreement, defendant appeals as of right the trial court's orders granting plaintiff a preliminary injunction and granting summary disposition in favor of plaintiff, and the subsequent judgment awarding plaintiff $32,200.14 in attorney fees. We affirm.

## I. BACKGROUND FACTS AND PROCEDURAL HISTORY

Defendant was employed with plaintiff, a car dealership, from July 31, 2017, until December 31, 2019, as a preowned sales professional. In June 2019, defendant signed a noncompete agreement, which prohibited him from, on termination of his employment with plaintiff, obtaining employment with any of plaintiff's competitors. The agreement was limited in term to a one-year period after defendant's employment with plaintiff was terminated and was further limited to only those of plaintiff's competitors that were located within 25 miles of plaintiff's business. If breached, the noncompete agreement awarded plaintiff equitable relief, and reasonable attorney fees and costs associated with its enforcement.

On January 1, 2020, defendant was promoted to the role of assistant to the used vehicle manager, and remained in that role until March 24, 2020, when he was placed on temporary leave because of the COVID pandemic. Defendant returned to work with plaintiff on May 27, 2020, as a preowned sales professional. Defendant voluntarily resigned on January 27, 2021, and at the same time began employment with one of plaintiff's competitors, located within the 25-mile geographic scope prohibited by the noncompete agreement.

Plaintiff filed a complaint against defendant for breach of contract in June 2021, and moved for a preliminary injunction prohibiting defendant from continuing his employment with plaintiff's competitor and otherwise violating the noncompete agreement. The trial court granted plaintiff's motion for preliminary injunction in January 2022, in part. Specifically, the trial court ordered that until the restrictive period expired on January 27, 2022, defendant, while not needing to resign his current employment, was required to inquire if any customer or potential customer previously had communications with any representative of plaintiff. If a potential customer had such communications, defendant was to notify the customer he was unable to participate in the sale.

After a lengthy period of failed attempts to compromise, plaintiff moved for summary disposition under MCR 2.116(C)(10), seeking a specific finding that defendant violated the noncompete agreement. The trial court granted plaintiff's motion, finding that defendant did, in fact, breach the parties' agreement. Plaintiff thereafter moved for attorney fees and costs, and the trial court entered judgment against defendant in favor of plaintiff, awarding plaintiff $32,200 in attorney fees. This appeal followed.

## II. STANDARDS OF REVIEW

"This Court reviews de novo a trial court's decision on a motion for summary disposition." *Johnson v VanderKooi*, 502 Mich 751, 761; 918 NW2d 785 (2018). "A motion brought pursuant to MCR 2.116(C)(10) tests the factual sufficiency of a claim." *Id*. "When reviewing such a motion, a trial court considers affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties . . . in the light most favorable to the party opposing the motion." *Id*. (quotation marks and citation omitted; alteration in original). "A genuine issue of material fact exists when the record leave[s] open an issue upon which reasonable minds might differ." *Id*. (quotation marks and citation omitted; alteration in original).

This Court reviews "a trial court's decision to grant injunctive relief for an abuse of discretion." *Pontiac Fire Fighters Union Local 376 v City of Pontiac*, 482 Mich 1, 8; 753 NW2d 595 (2008). "The trial court abuses its discretion when its decision falls outside this range of principled outcomes." *Id*.

"[Q]uestions involving the proper interpretation of a contract or the legal effect of a contractual clause are [] reviewed de novo." *Rory v Continental Ins Co*, 473 Mich 457, 464; 703 NW2d 23 (2005). "The reasonableness of a noncompetition provision is a question of law when the relevant facts are undisputed." *Coates v Bastian Bros, Inc*, 276 Mich App 498, 506; 741 NW2d 539 (2007). "Questions of law are reviewed de novo." *Id*. "Questions of statutory interpretation, construction, and application are reviewed de novo." *Johnson v Johnson*, 329 Mich App 110, 118; 940 NW2d 807 (2019). This Court reviews "a trial court's award of attorney fees and costs for an abuse of discretion." *Pirgu v United Servs Auto Ass'n*, 499 Mich 269, 274; 884 NW2d 257 (2016).

## III. REASONABLE BUSINESS INTERESTS

Defendant first argues the noncompete agreement was unenforceable because it did not protect a reasonable business interest, restricted wage growth, and stifled employee mobility. We disagree.

A noncompete agreement is enforceable against a former employee if it complies with MCL 445.774a(1), which states:

An employer may obtain from an employee an agreement or covenant which protects an employer's reasonable competitive business interests and expressly prohibits an employee from engaging in employment or a line of business after termination of employment if the agreement or covenant is reasonable as to its duration, geographical area, and the type of employment or line of business. To the extent any such agreement or covenant is found to be unreasonable in any respect, a court may limit the agreement to render it reasonable in light of the circumstances in which it was made and specifically enforce the agreement as limited.

Generally, courts "presume the legality, validity, and enforceability of contracts." *Coates*, 276 Mich App at 507. "But noncompetition agreements are disfavored as restraints on commerce and are only enforceable to the extent they are reasonable." *Id*. "A court must assess the reasonableness of the noncompetition clause if a party has challenged its enforceability." *Coates*, 276 Mich App at 507-508. This Court has held:

[A] restrictive covenant must protect an employer's reasonable competitive business interests, but its protection in terms of duration, geographical scope, and the type of employment or line of business must be reasonable. Additionally, a restrictive covenant must be reasonable as between the parties, and it must not be specially injurious to the public.

Because the prohibition on all competition is in restraint of trade, an employer's business interest justifying a restrictive covenant must be greater than merely preventing competition. To be reasonable in relation to an employer's competitive business interest, a restrictive covenant must protect against the employee's gaining some unfair advantage in competition with the employer, but not prohibit the employee from using general knowledge or skill. [*Id*. at 506-507 (citation omitted; alteration in original).]

In the instant matter, the noncompetition agreement stated:

I acknowledge that this agreement is intended to protect the Employer's reasonable competitive business interests and its protection in terms of duration, geographical scope and type of employment/line of business restrictions are reasonable between the Me [sic] and the company. I agree that for a period of 12 months after my termination of employment with the Company, regardless of the reason for termination of employment, I shall not participate either personally or financially, direct [sic] or indirectly, in any enterprise in competition with the company within 25 miles of any business location of the company. In the event of any violation of this agreement the Company shall be immediately entitled to injunctive and other equitable relief as well as all legal remedies and reimbursement of all costs and reasonable attorney fees incurred in enforcing this agreement.

"The terms of the contract are accorded their plain and ordinary meaning." *Hastings Mut Ins Co v Safety King, Inc*, 286 Mich App 287, 292; 778 NW2d 275 (2009). "If the contractual language is unambiguous, courts must interpret and enforce the contract as written because an unambiguous contract reflects the parties' intent as a matter of law." *Id*. Further, "the law presumes that the parties understand the import of a written contract and had the intention manifested by its terms." *Burkhardt v Bailey*, 260 Mich App 636, 656; 680 NW2d 453 (2004) (quotation marks and citation omitted). Because the agreement specifically stated that it was intended to protect plaintiff's reasonable business interests, defendant specifically acknowledged the same by signing the agreement. Other facts support that the agreement did, in fact, protect plaintiff's reasonable business interests.

Defendant was employed as a preowned vehicle sales professional with plaintiff's car dealership for over three years. Plaintiff's general sales manager, Richard Resinger, swore in an affidavit that during defendant's employment, plaintiff provided defendant training in sales methods and strategies, including VAuto appraisal process; Champion sales training system; Oplogic CRM training; and Ethos financial services. According to Resinger, when defendant was promoted to assistant to the used vehicle manager in January 2020, he was given access to plaintiff's software, which contained confidential information including plaintiff's work plans and its customary business development center follow up strategy. This information included marketing strategies, like assigning specific work plans with customers to optimize the customer's engagement. The software contained data related to the success of these customer engagement strategies, which was not publicly available. Further, Resinger swore defendant had access to managerial information, including a shared data drive containing customer transactional logs and revenue, datasets related to vehicle inventory; and marketing practices and strategies. Resinger also swore that defendant participated in all weekly management meetings, which were held three times per week, where confidential information concerning used inventory management tools; inventory and pricing practices; competitive data sets plaintiff created through licensed software to compare their fastest moving most profitable models to competitors; monthly advertising budgets; vehicle wholesale practices; and customer transactional logs and revenue were discussed.

The trial court considered the above in granting plaintiff summary disposition, noting defendant's argument that plaintiff did not articulate its reasonable competitive business interests did "not comport with the specific reasons Plaintiff provided in its motion and brief supporting its claim that the Agreement protects a reasonable business interest." In other words, plaintiff provided concrete examples of confidential information acquired by defendant during his employment and defendant provided nothing to refute plaintiff's specific, detailed examples except for a blanket statement made by defendant in an affidavit that during all of his employment with plaintiff he was never "a person with knowledge of or access to trade secrets, customer lists, business plans or sales strategies, sales data, salaries and compensation for employees, or [plaintiff's] financial information." This blanket statement did not address plaintiff's very specific statements of data and information that defendant was provided knowledge of and access to, including advertising information and customer logs.

In *St Clair Med, PC v Borgiel*, 270 Mich App 260, 268; 715 NW2d 914 (2006), this Court determined that a competitive business interest existed in a medical setting in retaining patients, in providing a medical practice with time to regain goodwill with its patients, and in preventing a doctor from using patient contacts gained during the course of his employment in the medical

practice to unfair advantage in competition with plaintiff. "A physician who establishes patient contacts and relationships as the result of the goodwill of his employer's medical practice is in a position to unfairly appropriate that goodwill and thus unfairly compete with a former employer upon departure." *Id*. Further:

> Where the physician-patient relationship was facilitated by a physician's association with his employer or resulted from advertising dollars expended by that employer, a physician can unfairly take advantage of the employer's investments in advertising and goodwill when competing with the former employer to retain patients. [*Id*.]

While a physician-patient relationship is not on par with a salesperson-purchaser relationship, the same fundamental principles regarding an employer's goodwill, training, and advertising are not to be underestimated.

Defendant also ignores that that prior to his layoff due to COVID, he was promoted to the role of assistant to the used vehicle manager. Whether defendant subjectively believed the training he received in that role, or as his role as a preowned sales professional, or the information he was exposed to, had access to and knowledge of in either role constituted a "reasonable competitive business interest" under MCL 445.774a(1) is not the deciding factor on the issue of whether the noncompete agreement is enforceable. In evaluating a noncompete clause for reasonableness, we not only consider the reasonableness of the competitive business interests justifying the clause, but *also* generally examine the clause's duration, geographic scope, the type of employment prohibited. MCL 445.774a(1); *St Clair Med, PCl*, 270 Mich App at 266. We thus do not look at the reasonableness of plaintiff's asserted business interests in a vacuum.

Here, the 12-month restriction in the noncompete agreement was reasonable in duration. See *Rooyakker & Sitz, PLLC v Plante & Morgan, PLLC*, 276 Mich App 146, 158; 742 NW2d 409 (2007) (holding a two-year restriction on soliciting clients by accountants who left an accounting firm was reasonable). And defendant was free to temporarily work outside of the 25-mile area restricted by the agreement, or in another industry. Even if defendant chose to work in another industry, or at another car dealership, he could do so outside of the 25-mile restriction, and he would only be required to do so for one year before the agreement expired. However, not only did defendant obtain employment in the exact same industry the same day he quit working for plaintiff, he worked for an employer selling the same brand of car as plaintiff, a mere six miles away.

Given these facts, the noncompete agreement protected a reasonable business interest and defendant provided no evidence to suggest it restricted wage growth or stifled employee mobility. Thus, the trial court did not err in finding the noncompete agreement enforceable and in granting summary disposition in plaintiff's favor.

## IV. ESTOPPED FROM SEEKING DAMAGES

Defendant next makes two related arguments in asserting that plaintiff is estopped from seeking damages. First, defendant claims that the restrictive period on the noncompete agreement began to run in March 2020, when defendant was "terminated" because of COVID. When

defendant gained employment with plaintiff's competitor in late January 2021, then, only two months remained on the restrictive period, and plaintiff filed its complaint in June 2021, which was outside the restrictive period. Second, defendant avers that plaintiff suffered no damages during this period, estopping it from claiming any equitable or legal relief. We disagree.

The trial court considered defendant's argument that the temporary leave was a termination noting:

> this argument is not legally supported. Additionally, Defendant, in what appears to be a misguided attempt to shore up his argument, avers that the time period during which the Agreement was in effect began running on March 24, 2020 when he was terminated and ended on March 24, 2021, so there was only a period of two months in which he actually violated it by working for the competitor. This essentially amounts to Defendant's concurrence that the Agreement was valid and that he violated it.

Defendant does not suggest plaintiff's complaint was moot when filed. Rather, he appears to argue the amount of time defendant worked at plaintiff's competitor was too short for plaintiff to suffer damages. Because no damages occurred during that short amount of time, plaintiff was not entitled to the preliminary injunction and attorney fees and costs. By making this argument, defendant admits the noncompete agreement was valid, and he breached it.[1]

The issue of plaintiff's attorney fees is one of contractual interpretation. When he signed the agreement, defendant agreed:

> In the event of any violation of this agreement the Company shall be immediately entitled to injunctive and other equitable relief as well as all legal remedies and reimbursement of all costs and reasonable attorney fees incurred in enforcing this agreement.

Defendant does not dispute he voluntarily entered the agreement and violated it when he gained employment with plaintiff's competitor. When interpreting a contract, "[t]he terms of the contract are accorded their plain and ordinary meaning." *Hastings Mut Ins Co*, 286 Mich App at 292. "If the contractual language is unambiguous, courts must interpret and enforce the contract as written because an unambiguous contract reflects the parties' intent as a matter of law." *Id*. Indeed, "the fundamental right to contract must be protected by allowing parties to contract freely and *by*

---

[1] To the extent defendant challenges the trial court's issuance of the preliminary injunction, the issue is moot, as the injunction ended two years ago. "An issue is moot if an event has occurred that renders it impossible for [this Court] court to grant relief." *Tenneco Inc v Amerisure Mut Ins Co*, 281 Mich App 429, 472; 761 NW2d 846 (2008). "[A]s a general rule, this Court will not entertain moot issues or decide moot cases." *TM v MZ*, 501 Mich 312, 317; 916 NW2d 473 (2018) (quotation marks and citation omitted; alteration in original). We decline to consider the issue of the preliminary injunction.

*enforcing contractual agreements*[.]" *Allard v Allard*, 318 Mich App 583, 596; 899 NW2d 420 (2017) (emphasis added).

Defendant freely entered into the noncompete agreement with plaintiff, and does not dispute here that he violated it. A key, unambiguous term in the agreement was plaintiff's entitlement to equitable relief and legal remedies if the noncompete agreement was breached. Defendant agreed to this term when he signed the noncompete agreement. As a result, the issue of plaintiff's burden to show damages occurred is irrelevant, and the trial court properly granted plaintiff's motion for attorney's fees and costs because it was an unambiguous term in the contract.

## V. SUBSEQUENT AGREEMENTS

Defendant next argues the terms of later compensation program agreements he signed voided the noncompete agreement. We disagree.

"It is hornbook law that parties to a contract are not forever locked into its terms. They are at all times free to alter, amend, or modify their agreement. Moreover, the parties may execute a substituted agreement which totally supersedes the terms of the original." *Archambo v Lawyers Title Ins Corp*, 466 Mich 402, 412; 646 NW2d 170 (2002) (citation omitted). "[A]n integration clause nullifies all antecedent agreements[.]" *Id.* at 413 (quotation marks and citation omitted). Our Supreme Court has noted:

> it is not always necessary for a later contract to contain an integration clause in order for this later contract to supersede an earlier contract. Rather, if the later contract covers the same subject matter as the earlier contract and contains terms that are inconsistent with the terms of the earlier contract, the later contract may supersede the earlier contract, unless it appears that this is not what the parties intended. [*Id.* at 414 n 16.]

In other words, "[w]hen two agreements cover the same subject matter and include inconsistent terms, the later agreement supersedes the earlier agreement." *CMI Int'l, Inc v Intermet Int'l Corp*, 251 Mich App 125, 130; 649 NW2d 808 (2002).

In May 2020, plaintiff and defendant signed an agreement regarding his monthly compensation, which stated: "This document supersedes any previous pay plan document or arrangement between the employee and the dealership." The parties signed an identical document in January 2021, which contained the same clause.

The merger clause in the compensation agreements plainly states, the compensation agreements supersede any prior *pay plan document or arrangement* between the defendant and plaintiff, not *any* prior arrangement. In other words, the merger clauses in the compensation agreements were narrowly written to supersede prior pay plan arrangements. While "an integration clause nullifies all antecedent agreements[,]" *Archambo*, 466 Mich 413 (quotation marks and citation omitted), it only does so "when [the] two agreements cover the same subject matter and include inconsistent terms . . . ." *CMI Int'l, Inc*, 251 Mich App at 130. The compensation agreements do not cover the same subject matter as the noncompete agreement, nor do they include inconsistent terms. The trial court correctly reasoned, "it is unclear how this language regarding 'pay plans' relates to the [noncompete] Agreement[.]" As a result, the trial

court did not err when it held the noncompete agreement was not voided by the compensation agreements, and properly granted summary disposition to plaintiff.

## V. FAILURE OF CONSIDERATION

Finally, defendant contends he signed the noncompete agreement to obtain an increase in his commission rate. He suggests, because he signed the noncompete agreement in consideration for an increase in compensation, and was placed on leave by plaintiff because of COVID in March 2020, plaintiff reneged the consideration on which the noncompete agreement was based, because defendant was no longer being compensated by plaintiff while on temporary leave. As a result, defendant argues he is not bound by the noncompete agreement. We disagree.

"An essential element of a contract is legal consideration." *Yerkovich v AAA*, 461 Mich 732, 740; 610 NW2d 542 (2000). "Consideration is [s]ome right, interest, profit or benefit accruing to one party, or some forbearance, detriment, loss, or responsibility, given, suffered, or undertaken by the other." *Yoches v City of Dearborn*, 320 Mich App 461, 480; 904 NW2d 887 (2017) (quotation marks and citation omitted; alteration in original). "Consideration exists when there is a benefit on one side, or a detriment suffered, or service done on the other." *Id*. (quotation marks and citation omitted). "Generally, courts do not inquire into the sufficiency of consideration[.]" *Innovation Ventures, LLC v Liquid Mfg, LLC*, 499 Mich 491, 508; 885 NW2d 861 (2016). "[A] cent or a pepper corn, in legal estimation, would constitute a valuable consideration." *Id*. (quotation marks and citation omitted).

Defendant's argument hinges on his affidavit, in which he swore: "As part of the deal to increase my commissions, I was told I had to sign the Non-Compete." Defendant suggests he suffered detriment by signing the noncompete in exchange for the benefit of increasing his compensation; when plaintiff placed him on temporary leave in March 2020, he was not compensated, which resulted in plaintiff reneging the consideration for the noncompete agreement. The trial court considered defendant's argument, but noted: "Because [the noncompete] is non-ambiguous [sic], [the trial court] would be barred from considering extrinsic evidence [contained in defendant's affidavit]." Defendant's statements in the affidavit are extrinsic evidence. The trial court correctly found the noncompete agreement was unambiguous because it did not contain two irreconcilably conflicting provisions, or terms susceptible to more than one meaning. See *Bodnar v St John Providence, Inc*, 327 Mich App 203, 220; 933 NW2d 363 (2019). Because the noncompete agreement was unambiguous, the trial court was required to "construe and enforce the language as written." *Id*.

The first sentence of the noncompete agreement stated: "In consideration of my continued employment at Matthews-Hargreaves Chevrolet ("Dealership"), I agree as follows[][.]" The noncompete agreement explicitly stated consideration for entering into it was continued employment with plaintiff, and the trial court correctly held it could not consider defendant's extrinsic evidence in determining the noncompete agreement's validity. It is impossible to construe the language otherwise, because the intent of the contracting parties "is discerned from the contractual language as a whole according to its plain and ordinary meaning." *Bodnar*, 327

Mich App at 220. As a result, the trial court correctly found no genuine issue of material fact and properly granted plaintiff summary disposition.

Affirmed.

/s/ Kristina Robinson Garrett
/s/ Deborah A. Servitto
/s/ James Robert Redford