AMERICAN FAMILY ASSOCIATION OF MICHIGAN
v MICHIGAN STATE UNIVERSITY BOARD OF TRUSTEES

Docket No. 273997. Submitted May 1, 2007, at Lansing. Decided June 12, 2007, at 9:00 a.m. Leave to appeal denied, 480 Mich ___.

The American Family Association of Michigan brought an action in the Ingham Circuit Court against the Michigan State University Board of Trustees, alleging that the board's policy of providing benefits to same-sex domestic partners constituted an illegal expenditure of state funds in light of state constitutional and statutory provisions defining marriage as the union of a man and a woman. The trial court, James R. Giddings, J., granted the defendant's motion for summary disposition on the ground that the plaintiff lacked standing, and the plaintiff appealed.

The Court of Appeals *held*:

1. The trial court properly determined that the plaintiff was required to establish that it suffered an actual or imminent, concrete and particularized invasion of a legally protected interest, distinct from that of the public generally, as a result of the defendant's benefits policy in order to have standing to sue. Because the plaintiff offered no evidence to support its assertion that it met these requirements, the trial court properly granted summary disposition.

2. The plaintiff's action is not tantamount to a qui tam action because, in enacting MCL 600.2041, the state did not assign to nonprofit corporations or taxpayers any claim for the illegal expenditure of state funds, which would have given such entities standing to sue for that expenditure.

Affirmed.

ACTIONS — STANDING CONFERRED BY STATUTE OR COURT RULE — ADDITIONAL STANDING REQUIREMENTS.

A domestic nonprofit corporation that is statutorily empowered to bring an action to prevent an illegal expenditure of state funds must also establish that it suffered an actual or imminent, concrete and particularized invasion of a legally protected interest distinct from that of the public generally in order to have standing to sue (MCL 600.2041[3]; MCR 2.201[B][4]).

*Thomas More Law Center* (by *Patrick T. Gillen*) for American Family Association of Michigan.

*Theresa Kelley* and *Michael J. Kiley* for Michigan State University Board of Trustees.

*Arthur R. Przybylowicz* and *Theresa J. Alderman* for Michigan State University Administrative-Professional Association, MEA/NEA.

*Finkel, Whitefield, Selik, Ferrara, Feldman & Sherbin, P.C.* (by *Nancy Harris Pearce* and *Michael L. Weissman*), for the Clerical-Technical Union of Michigan State University.

Amicus Curiae:

*Law Office of Douglas E. Meeks* (by *Douglas E. Meeks*) and *Brendan T. Beery* for Michigan State University Gay and Lesbian Faculty and Staff Association.

Before: MARKEY, P.J., and SAWYER and BANDSTRA, JJ.

BANDSTRA, J. Plaintiff appeals as of right the order dismissing its complaint. We affirm.

Plaintiff filed the instant action challenging defendant's policy of providing benefits to same-sex domestic partners as defined by defendant, alleging that this policy constitutes an illegal expenditure of state funds to define and recognize same-sex domestic partnerships in violation of art 1, § 25 of the Michigan Constitution[1] and state law governing marriage and divorce as set forth in MCL 551.1 *et seq.* Plaintiff identifies itself as a

---

[1] Const 1963, art 1, § 25 provides: "To secure and preserve the benefits of marriage for our society and for future generations of children, the union of one man and one woman in marriage shall be the only agreement recognized as a marriage or similar union for any purpose."

Michigan nonprofit corporation organized for civic purposes, including "to promote the welfare of children through the promotion and preservation of the traditional family in our society." Plaintiff asserts that defendant's benefits policy advances an interest contrary to plaintiff's mission and that the policy is "at odds with that which plaintiff seeks to promote."

Defendant moved for summary disposition pursuant to MCR 2.116(C)(5), (8), and (10), arguing that plaintiff lacked standing to bring this action.[2] The trial court granted this motion, concluding that to establish standing plaintiff was required, but failed, to show that it had suffered an actual or imminent, concrete and particularized injury as a result of defendant's benefits policy, which injury likely would be redressed by a favorable decision.

On appeal, plaintiff argues that the trial court erred in concluding that it lacked standing. Plaintiff asserts that it meets the requirements for standing set forth by MCL 600.2041[3] and MCR 2.201[4] and that doing so is sufficient, without more, to confer standing. We disagree.

This Court reviews de novo a trial court's determination whether a party has legal standing to assert a

---

[2] The intervening defendants each joined in defendant's motion.

[3] MCL 600.2041(3) provides in relevant part that "an action to prevent the illegal expenditure of state funds or to test the constitutionality of a statute relating thereto may be brought in the name of a domestic nonprofit corporation organized for civic, protective, or improvement purposes . . . ."

[4] MCR 2.201(B)(4) mirrors the language of MCL 600.2041(3):

An action to prevent illegal expenditure of state funds or to test the constitutionality of a statute relating to such an expenditure may be brought:

(a) in the name of a domestic nonprofit corporation organized for civic, protective, or improvement purposes . . . .

claim. *Michigan Ed Ass'n v Superintendent of Pub Instruction*, 272 Mich App 1, 4; 724 NW2d 478 (2006) (*MEA*). As our Supreme Court explained in *House Speaker v Governor*, 443 Mich 560, 572; 506 NW2d 190 (1993):

> The concept of standing represents a party's interest in the outcome of litigation that ensures sincere and vigorous advocacy. However, a commitment to vigorous advocacy alone is not enough. Rather, *"[s]tanding requires a demonstration that the plaintiff's substantial interest will be detrimentally affected in a manner different from the citizenry at large."* [Citation omitted, emphasis added.]

In *House Speaker*, our Supreme Court determined that the Michigan United Conservation Clubs (MUCC) and the Michigan Environmental Protection Foundation (MEPF) had standing under MCR 2.201 to sue the Governor for allegedly overstepping his authority in issuing an executive order abolishing the existing Department of Natural Resources and creating a new department in its place. *Id.* at 564-566, 572. The Court explained that MCR 2.210(B)(4)

> allows a domestic nonprofit corporation organized for civic, protective, or improvement purposes to bring an action to prevent the illegal expenditure of state funds. The MEPF is a nonprofit Michigan corporation whose purposes are to evaluate legal issues and bring environmental litigation on issues of statewide importance. The MUCC is a nonprofit Michigan corporation whose purposes are to further the cause of the environment and conservation in all its phases, to promote and encourage the intelligent use of resources, to promote conservation education programs, and to protect and defend the rights of citizens to keep and bear arms. We find that these corporations are organized for civic, protective, or improvement purposes and, as such, are the type of plaintiff the court rule envisioned.
>
> Moreover, it fairly can be said that this lawsuit was brought to prevent the illegal expenditure of state funds.

For purposes of determining standing, we must "accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party." *Warth v Seldin,* 422 US 490, 501; 95 S Ct 2197, 2206; 45 L Ed 2d 343 (1975). Therefore, for this limited purpose, we assume that the Governor had no authority to create a "new" [Department of Natural Resources], and any money spent by such an agency would be done illegally. As a result, we find that the plaintiffs can be said to have brought this lawsuit to prevent the expenditure of state funds by a group having no lawful authority to make such expenditures. On this basis, plaintiffs MUCC and MEPF have standing. [*Id.* at 572-573.]

Several years later our Supreme Court again addressed standing in *Lee v Macomb Co Bd of Comm'rs,* 464 Mich 726, 740; 629 NW2d 900 (2001), in which it adopted the federal test for standing that the United States Supreme Court articulated in *Lujan v Defenders of Wildlife,* 504 US 555; 112 S Ct 2130; 119 L Ed 2d 351 (1992), as supplementing Michigan's requirements for standing. The Court, noting the constitutional significance of standing, explained:

It is important, initially, to recognize that in Michigan, as in the federal system, standing is of great consequence so that neglect of it would imperil the constitutional architecture whereby governmental powers are divided between the three branches of government.

Standing, as a requirement to enter the courts, is a venerable doctrine in the federal system that derives from US Const, art III, § 1, which confers only "judicial power" on the courts and from US Const, art III, § 2's limitation of the judicial power to "Cases" and "Controversies."

* * *

In Michigan, standing has developed on a track parallel to the federal doctrine, albeit by way of an additional constitutional underpinning. In addition to Const 1963, art 6, § 1, which vests the state "judicial power" in the courts,

Const 1963, art 3, § 2 expressly directs that the powers of the legislature, the executive, and the judiciary be separate. Concern with maintaining the separation of powers, as in the federal courts, has caused this Court over the years to be vigilant in preventing the judiciary from usurping the powers of the political branches.

\* \* \*

In fleshing out the tests that a litigant must meet to establish standing, the most recent majority iteration from this Court is found in *House Speaker v Governor*, 441 Mich 547, 554; 495 NW2d 539 (1993) . . . . *House Speaker* provided a general description of standing and articulated the requirement of an interest distinct from that of the public. However, further explication of the essential elements of standing has proven difficult as demonstrated by this Court's experience in attempting to fashion a clear majority in *Detroit Fire Fighters Ass'n v Detroit*, 449 Mich 629; 537 NW2d 436 (1995). In that case, the separate opinions suggested different inquiries as being central to determining standing. Some focused on whether the plaintiff could establish an injury distinct from that of the public, others on whether the plaintiffs were in the zone of interest the statutory or constitutional provision at issue is designed to regulate. Perhaps the clearest template was set forward by Justice CAVANAGH who, along with Justice BOYLE, advocated adopting the United States Supreme Court's *Lujan* test. *Lujan* held:

"Over the years, our cases have established that the irreducible constitutional minimum of standing contains three elements. First, the plaintiff must have suffered an 'injury in fact'—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) 'actual or imminent, not "conjectural" or "hypothetical." ' Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be 'fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court.' Third, it must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'

"The party invoking . . . jurisdiction bears the burden of establishing these elements. [504 US 560-561 (citations omitted).]"

In our view, the *Lujan* test has the virtues of articulating clear criteria and of establishing the burden of demonstrating these elements. Moreover, its three elements appear to us to be fundamental to standing; the United States Supreme Court described them as establishing the "irreducible constitutional minimum" of standing. We agree. *Accordingly, we now join Justice* CAVANAGH's *view and adopt the* Lujan *test, which should be seen as supplementing the holding in* House Speaker, *as well as this Court's earlier standing jurisprudence . . . .* [*Id.* at 735-740 (emphasis added).]

Applying the *Lujan* test, the Court concluded that the plaintiffs "clearly" lacked standing because they failed to show an " 'invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not "conjectural" or "hypothetical." ' " *Id.* at 740, quoting *Lujan, supra* at 560. The Court specifically noted that a general allegation that the plaintiffs suffered "great harm and damage" was not sufficiently concrete or particularized to afford the plaintiffs standing. *Id.*

In *Nat'l Wildlife Federation v Cleveland Cliffs Iron Co,* 471 Mich 608, 612; 684 NW2d 800 (2004), our Supreme Court reaffirmed its "support for the principles of standing set forth in *Lee,* and explain[ed] the importance of *Lee* for our constitutional system of separated powers and for the preservation of a judiciary operating within proper boundaries." In so doing, the Court observed:

Perhaps the most critical element of the "judicial power" has been its requirement of a genuine case or controversy between the parties, one in which there is a real, not a hypothetical, dispute, and one in which the

plaintiff has suffered a "particularized" or personal injury. Such a "particularized" injury has generally required that a plaintiff must have suffered an injury distinct from that of the public generally.

Absent a "particularized" injury, there would be little that would stand in the way of the judicial branch becoming intertwined in every matter of public debate.

\* \* \*

When a broadening and redefinition of the "judicial power" comes not from the judiciary itself, usurping a power that does not belong to it, but from the Legislature purporting to confer new powers upon the judiciary, the exercise of such power is no less improper. [*Id.* at 615-616 (citations omitted).]

The Court observed further that "[t]he requirement of a genuine case or controversy as a precondition for the exercise of the 'judicial power' is not a mere fine point of constitutional law." *Id.* at 618. Rather, failing to require that a plaintiff suffer "an 'immediate, personal injury' in order to have standing to bring a lawsuit" would " 'materially alter[] the function of judicial review and seriously undermine[] any acceptable justifications for it.' " *Id.* (citation omitted). The Court reiterated that it "continue[d] to adhere to *Lee,* and conclude[d] that *Lee* was correct in its holding that questions of standing implicate the constitutional separation of powers, and that forsaking this proposition 'would imperil the constitutional architecture . . . .' " *Id.* at 621. The Court explained once more that to establish standing, the plaintiffs were required to establish the three elements set forth in *Lee*: (1) an invasion of a legally protected interest that is concrete and particularized and actual or imminent, (2) a causal connection between the injury and the complained-of conduct, and (3) that it is likely that the injury will be

redressed by a favorable decision. *Id.* at 628-629. And the Court again disavowed any ability by the Legislature to "at its discretion . . . confer jurisdiction upon this Court unmoored from any genuine case or controversy . . . ." *Id.* at 622.

Most recently, in *MEA,* this Court made clear that in addition to meeting the requirements for filing suit set forth in MCL 600.2041 and MCR 2.201, a plaintiff must also establish that it meets the constitutionally imposed minimum requirements for standing set forth in *Lee* and *Lujan.* At issue in *MEA* was whether the plaintiff Michigan Education Association (the Association) had standing pursuant to MCL 600.2041 and MCR 2.201 to challenge the expenditure of state funds by Bay Mills Community College (BMCC) to authorize charter schools. The Association asserted that BMCC's charter schools were not public schools and therefore that the payment of state funds to these schools violated the Michigan Constitution's provision against public funding for nonpublic schools. *MEA, supra* at 3-4. The Association argued that the wages of its members would suffer by virtue of the illegal expenditure. This Court concluded that the Association lacked standing to assert its claims because, although it met the statutory requirements for bringing suit, it failed to "meet the constitutional minimum criteria for standing," including alleging or suffering "the required 'injury in fact.' " *Id.* at 5. The Court reasoned as follows:

> We begin our analysis with the observation that our Supreme Court has indeed repeatedly endorsed the test for standing articulated by the United States Supreme Court in *Lujan*[, *supra* at 560-561]. See *Nat'l Wildlife*[, *supra* at 628-629]; *Crawford v Dep't of Civil Service,* 466 Mich 250, 258; 645 NW2d 6 (2002); *Lee*[, *supra* at 739-740]. In *Nat'l Wildlife,* our Supreme Court stated that, at a minimum, standing requires the following three elements:

" 'First, the plaintiff must have suffered an "injury in fact"—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) "actual or imminent, not 'conjectural' or 'hypothetical.' " Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be "fairly . . . traceable to the challenged action of the defendant, and not . . . the result [of] the independent action of some third party not before the court." Third, it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision." ' " [*Nat'l Wildlife*, *supra* at 628-629, quoting *Lee, supra* at 739, quoting *Lujan*, *supra* at 560-561.]"

Thus, ordinarily, plaintiff must meet the constitutional minimum criteria for standing in order to have standing. [*Id.* at 5.]

This Court thus held that the Association was required to meet both the statutory requirements for filing suit set forth in MCL 600.2041 and MCR 2.201(B)(4) *and* the constitutionally imposed minimum standing requirements set forth in *Lee* and *Lujan* to bring an action challenging BMCC's expenditure of funds and, further, that to the extent that MCL 600.2041(3) and MCR 2.201(B)(4) confer standing broader than the limits imposed by Michigan's Constitution, they are unconstitutional. *MEA, supra* at 7-12. Noting that the Association "presented no evidence that it suffered an invasion of a legally recognized interest that is actual or imminent, not hypothetical or conjectural," but offered only "bare assertions that the public funding of BMCC's charter schools injures plaintiff's members," the Court concluded that the Association did "not provide[] sufficient evidence to satisfy the constitutional elements required for standing." *Id.* at 5-7.

Here, as in *MEA*, plaintiff alleged that, as a Michigan nonprofit corporation organized for civic purposes, it has standing under MCL 600.2041 and MCR 2.201(B)

to institute the instant action. Plaintiff argues that our Supreme Court determined in *House Speaker* that the statutory grant of standing set forth in MCL 600.2041 and MCR 2.201(B)(4) is constitutional; therefore, it need not meet any additional requirements to establish standing. However, as discussed earlier, *Lee* expressly stated that the *Lujan* test for standing was to "be seen as *supplementing* the holding in *House Speaker*, as well as [the] Court's earlier standing jurisprudence . . . ." *Lee, supra* at 740 (emphasis added). And in *Nat'l Wildlife, supra* at 628-629, our Supreme Court reiterated and reaffirmed that plaintiffs *must* allege an actual or imminent, concrete and particularized injury to establish standing, irrespective of any statutory authorization for bringing suit. Thus, as this Court explained in *MEA,* our Supreme Court has made clear that the minimum requirements set forth in *Lee* and *Lujan* are an absolute prerequisite to establishing standing and that those requirements supplement—that is, augment or add to—the requirements set forth in *House Speaker*. Therefore, we conclude that the trial court properly determined that plaintiff was required to establish that it had suffered an actual or imminent, concrete and particularized invasion of a legally protected interest, distinct from that of the public generally, as a result of defendant's benefits policy in order to have standing to institute the instant action.

Plaintiff asserts that, even under such a test, it has alleged a sufficient injury by asserting that defendant's recognition of same-sex domestic partnerships for benefits purposes conflicts with plaintiff's stated interest in and purpose of promoting and preserving the traditional family, marriage, and the welfare of children. However, plaintiff offers only a bare assertion that it is being injured by defendant's benefits policy. Plaintiff did not present any evidence to establish that it or its

members are directly affected by defendant's benefits policy in an individualized and particularized manner or that defendant's benefits policy detrimentally affects plaintiff's ' "substantial interest . . . in a manner different from the citizenry at large.' " *Lee, supra* at 738-739, quoting *House Speaker, supra* at 554. Indeed, plaintiff's only alleged injury is that defendant's provision of benefits to same-sex domestic partners is "at odds with that which [plaintiff] seeks to promote." Plaintiff essentially complains that defendant's benefits policy is an affront to the values that plaintiff and its members espouse and promote.[5] Accordingly, plaintiff has not established that it suffered a concrete and particularized, actual or imminent injury distinct from that of the citizenry at large, as required by *House Speaker, Lujan,* and *Lee.* Thus, plaintiff did not meet its burden of establishing standing, irrespective of whether it satisfied MCL 600.2041 and MCR 2.201(B). *MEA, supra.*

Plaintiff also asserts that its action under MCL 600.2041 is tantamount to a qui tam action challenging unlawful expenditures under the federal false claims act, 31 USC 3730 (FCA), which the United States Supreme Court found to be constitutional in *Vermont Agency of Natural Resources v United States ex rel Stevens,* 529 US 765; 120 S Ct 1858; 146 L Ed 2d 836 (2000). However, unlike the FCA, which designates a

---

[5] In contrast, perhaps, to students who might assert that their costs of attendance are increased by defendant's expenditure of funds to provide benefits to same-sex domestic partners, or to married recipients of those benefits who might assert that their cost of benefits is increased by that expenditure, plaintiff's asserted injury is no different from that which could be asserted by persons, groups, or entities whose values or beliefs lead them to oppose affording any recognition or status to same-sex relationships. The standing of students or benefit recipients such as we describe here in contrast to plaintiff is not, of course, at issue, and we express no opinion regarding their standing.

plaintiff thereunder as the assignee of the government's claim, MCL 600.2041 does not operate as an assignment to domestic nonprofit corporations or taxpayers of a claim by the state for the illegal expenditure of state funds which would have provided them with standing on that basis. Further, in *MEA*, this Court specifically held, in accordance with our Supreme Court's decisions in *House Speaker, Lee,* and *Nat'l Wildlife,* that mere compliance with MCL 600.2041 and MCR 2.201(B), without a showing of an adequate injury in fact resulting from the complained-of conduct, is insufficient to establish standing.

We affirm.