*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

---

HILLS OF OAKLAND SUBDIVISION
ASSOCIATION,

       Plaintiff-Appellee,

v

VICTORIA M. SEIBERT,

       Defendant-Appellant.

UNPUBLISHED
September 25, 2024
1:58 PM

No. 366370
Oakland Circuit Court
LC No. 2022-194953-CH

---

Before: CAMERON, P.J., and JANSEN and SWARTZLE, JJ.

PER CURIAM.

In this action alleging violation of a subdivision association's bylaws and covenants, defendant, a resident, appeals as of right the order granting summary disposition in favor of plaintiff, the homeowners' association, under MCR 2.116(C)(10) (no genuine issue of material fact). On appeal, defendant contends the trial court erred by granting plaintiff summary disposition because (1) it failed to recognize defendant's swim spa was not an aboveground pool, and (2) plaintiff's process for approving exterior improvements lacked a clear standard. Defendant also argues that (3) plaintiff's violations of its own restrictions and bylaws make its actions improper and void, and (4) the trial court erred by failing to consider a range of equitable relief, and instead granted an injunction ordering complete removal of defendant's structure. We affirm.

## I. BACKGROUND FACTS AND PROCEDURAL HISTORY

Plaintiff is a nonprofit corporation created in 1989 to administer the affairs of the Hills of Oakland residential subdivision in Rochester Hills. Property within the subdivision is subject to restrictive covenants stated in the Declaration of Restrictions for Hills of Oakland Subdivision.

The building-use restrictions are set forth in Article V of the Declaration, including Section 9H, which states, in pertinent part: "No above ground swimming pools shall be erected or maintained on any Lot." Section 17 of Article V describes the architectural control of the subdivision and provides, in relevant part:

-1-

A.  No house, building, fence, wall, deck, swimming pool, outbuilding or other structure, landscaping or exterior improvement shall be commenced, erected or maintained on any Lot, nor shall any exterior addition to or change or alteration therein or change in the exterior appearance thereof or change in landscaping be made until the plans and specifications showing the nature, kind, size, shape, height, colors, materials, topography and location of the same on the Lot shall have been submitted to and approved in writing by the Architectural Control Committee (the "Committee") composed of a person or persons (not to exceed three (3) in number) appointed by the Declarant. . . .

\* \* \*

E.  The Committee may disapprove plans because of noncompliance with these Restrictions, or because of reasonable dissatisfaction with the grading and drainage plan, the location of the structure on the Lot, the materials used, the color scheme, the finish, design, proportions, shape, height, style, or appropriateness of the proposed improvement or alteration or because of any matter or thing, which in the reasonable judgment of the Committee, would render the proposed improvement or alteration inharmonious or out of keeping with the objectives of the Committee or with the improvements erected on other Lots in the Subdivision. All Owners, by accepting ownership of their Lot, acknowledge that the primary purpose for providing for architectural control is to insure the proper and harmonious development of the Subdivision in order to maximize the aesthetic beauty of the Subdivision and its blending with the surrounding area.  To this end, Declarant or the Committee, as the case may be, shall be deemed to have broad discretion in terms of determining what dwellings, fences, walls, hedges, structures or improvements will be permitted and are in keeping with the aesthetic beauty and desirability of the Subdivision and are otherwise consistent with the purposes of these Restrictions.

Plaintiff is governed by its corporate bylaws.  Article III of the Bylaws, regarding the Board of Directors, states, in pertinent part:

Section 1.  Qualification of Directors.  The affairs of the Association shall be governed by a Board of Directors all of whom must be Owners of Lots in the Subdivision.  The Board shall consist of nine (9) members. . . .

As of the spring of 2022, the Board included eight members, and the Architectural Control Committee had four members.

Defendant has owned a lot in the subdivision since 2009.  In early 2022, defendant installed a concrete pad, elevated Trex deck, and Hydropool Swim Spa (collectively, "the structure") on her property.  The swim spa alone has cross-sectional dimensions of 18.33 feet by 7.75 feet, and a height of 4.4 feet.  A set of stairs leads to an elevated deck surrounding two of the four sides of the swim spa.  The entire structure is not connected to defendant's home.

In April 2022, a resident of the subdivision reported to the Board that he believed there was a new aboveground pool on defendant's property. Two days later, plaintiff's property manager sent a letter to defendant, alleging her act of installing the structure, without approval of the Committee, violated the Declaration. Within three weeks, defendant submitted specifications regarding the deck, swim spa, cover, and electrical work, a building permit, and site and structure drawings to plaintiff.

Members of the Committee deliberated the classification of the swim spa and the question of approval through e-mail. Plaintiff's property manager sent a second letter to defendant, stating the structure did not "comply with the requirements of the Declaration of Restrictions." Plaintiff and its manager requested defendant remove the structure, or alternatively, "submit a request for approval to convert it to an inground pool with the requisite township approval and safety fencing."

The Board voted unanimously to pursue enforcement of the Declaration against defendant. Plaintiff filed an amended complaint in August 2022, bringing a claim of breach of contract, alleging violations of Article V of the Declaration by: failing to submit plans and specifications to the Committee; installing a concrete pad, aboveground swimming pool, and deck without approval of the Committee; and erecting an aboveground pool. Plaintiff sought a permanent injunction against the alleged violations, requiring defendant to remove the entire structure at her expense.

Plaintiff moved for summary disposition under MCR 2.116(C)(10), arguing there was no question of fact that defendant failed to comply with the Declaration when she installed the structure without submitting plans and specifications and obtaining plaintiff's approval, and plaintiff had authority to demand removal. Plaintiff maintained the swim spa was an aboveground swimming pool, which is explicitly prohibited by the Declaration. Plaintiff attached to its motion an affidavit by an individual who was a member of the Board and Committee at the time of the denial, who averred, in part:

> 9. That in the Association's opinion, this "Hydropool SwimSpa" constitutes an above ground swimming pool.
>
> * * *
>
> 12. That in the Association's opinion, the Defendant's Exterior Additions are not typical in the Subdivision, and are not in keeping with the aesthetic beauty and desirability of the Subdivision.
>
> * * *
>
> 14. That I am not aware of any elevated deck that is not attached to or integral to a residence located upon any lot in the Subdivision other than the one that surrounds Defendant's "Hydropool SwimSpa."

Plaintiff also attached a manufacturer's brochure for the swim spa to its motion, which described the swim spa as a training device for stationary swimming, like a treadmill is for running.

Defendant also moved for summary disposition under MCR 2.116(C)(8) and (10), arguing the Board was in violation of its own Bylaws concerning voting and the number of members on

-3-

the Board and the Committee, so plaintiff lacked standing to sue.  Defendant also argued the swim spa was not an aboveground pool.  Finally, defendant contended the Committee lacked a clear standard for approval of lot improvements, making its enforcement actions unreasonable.

At a hearing on the motions, defendant argued that plaintiff denied approval because of its belief the swim spa should be classified as an aboveground pool, and for no other reason.  The trial court responded:

> *The Court*:  Why does it matter though?  I guess why does it matter what it is?  Why does it matter what we call it?  I mean I certainly don't, you know, wanna cause people aggravation but no matter what we call it—that or did she—was the cement poured for it?  And then the decking—
>
> *Defendant's Counsel*:  Yes—
>
> *The Court*:  —all those things require—required approval regardless of what—what it's called, right?

Defendant also argued that plaintiff failed to establish that the Board could authorize the filing of a lawsuit to enforce the Declaration without a vote of the full membership.  Finally, defendant argued removal of the structure was not the only available remedy.

Plaintiff argued that any noncompliance with the Bylaws concerning the number of members on the Board or Committee was not a substantial breach, if it was a breach at all, and the Board had statutory authority to take the actions needed to operate the corporation, contrary to defendant's illogical argument.  The trial court reasoned:

> Well they do—they do have the authority, right?  They do have the authority to enforce it.  You know, I hate to see her have to rip it down, but I don't think that there's any other choice.  I think I have to grant summary disposition on behalf of the Plaintiff.  She violated the restrictive covenant.  You know, I—I—I feel bad for her but I, you know, I don't know that there's any other ruling in this type of situation.  I'm hopeful that the board won't make her rip it down but she violated the restrictive covenant. . . .

The trial entered an order granting plaintiff's motion under MCR 2.116(C)(10), and denying defendant's motion under MCR 2.116(C)(8) and (10), for the reasons stated on the record.  The order required defendant to "remove the Hydropool SwimSpa, elevated [T]rex deck, and concrete pad . . . at her sole expense within ninety (90) days of the date of this Order."  This appeal followed.

## II.  STANDARDS OF REVIEW

We review summary disposition rulings de novo.  *Grossman v Brown*, 470 Mich 593, 598; 685 NW2d 198 (2004).  Summary disposition under MCR 2.116(C)(10) is warranted when, "[e]xcept as to the amount of damages, there is no genuine issue as to any material fact, and the moving party is entitled to judgment or partial judgment as a matter of law."  The moving party has the initial burden to identify "the issues as to which the moving party believes there is no

genuine issue as to any material fact." MCR 2.116(G)(4). If the moving party properly asserts and supports its motion for summary disposition, the "burden then shifts to the opposing party to establish that a genuine issue of disputed fact exists," and it cannot do this by relying on mere allegations or denials in its pleadings. *Quinto v Cross & Peters Co*, 451 Mich 358, 362; 547 NW2d 314 (1996). "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003). "If the opposing party fails to present documentary evidence establishing the existence of a material factual dispute, the motion is properly granted." *Lowrey v LMPS & LMPJ, Inc*, 500 Mich 1, 7; 890 NW2d 344 (2016) (quotation marks and citation omitted). And while circumstantial evidence can be sufficient to create a question of fact, mere speculation and conjecture is not. *Karbel v Comerica Bank*, 247 Mich App 90, 97-98; 635 NW2d 69 (2001).

A motion for summary disposition under MCR 2.116(C)(10) tests the factual support for a claim. *Maiden v Rozwood*, 461 Mich 109, 120; 597 NW2d 817 (1999). "A court may only consider substantively admissible evidence actually proffered relative to a motion for summary disposition under MCR 2.116(C)(10)." *Pioneer State Mut Ins Co v Dells*, 301 Mich App 368, 377; 836 NW2d 257 (2013). The court must consider the pleadings, affidavits, depositions, admissions, and other documentary evidence submitted, MCR 2.116(G)(5), and draw all reasonable inferences in favor of the nonmoving party, *Dextrom v Wexford Co*, 287 Mich App 406, 415; 789 NW2d 211 (2010). The trial court may not make findings of fact or weigh credibility in deciding a motion for summary disposition. *Patrick v Turkelson*, 322 Mich App 595, 605; 913 NW2d 369 (2018). "[I]f the evidence before it is conflicting, summary disposition is improper." *Lysogorski v Bridgeport Charter Twp*, 256 Mich App 297, 299; 662 NW2d 108 (2003) (quotation marks, citation, and emphasis omitted). Appellate review of a summary disposition ruling is limited to the evidence presented to the trial court at the time the motion was decided. *Innovative Adult Foster Care, Inc v Ragin*, 285 Mich App 466, 475-476; 776 NW2d 398 (2009).

Negative covenants are grounded in contract law. *Stuart v Chawney*, 454 Mich 200, 210; 560 NW2d 336 (1997). The proper interpretation of a contract is a question of law, which we review de novo. *Archambo v Lawyers Title Ins Corp*, 466 Mich 402, 408; 646 NW2d 170 (2002). The determination whether contractual language is ambiguous is a question of law subject to de novo review on appeal, *Casey v Auto Owners Ins Co*, 273 Mich App 388, 394; 729 NW2d 277 (2006), but the determination of the meaning of an ambiguous contract, including through the consideration of extrinsic evidence, is a question of fact unless the issue can be resolved according to the contractual terms alone, *Klapp v United Ins Group Agency, Inc*, 468 Mich 459, 469-470; 663 NW2d 447 (2003).

A grant or denial of injunctive relief is reviewed for an abuse of discretion. *Sys Soft Technologies, LLC v Artemis Technologies, Inc*, 301 Mich App 642, 650; 837 NW2d 449 (2013). A court's failure to exercise its discretion when properly requested to do so is reviewed under the same standard. *Rieth v Keeler*, 230 Mich App 346, 348; 583 NW2d 552 (1998). A trial court abuses its discretion when it selects an outcome falling outside the range of reasonable and principled outcomes. *Pirgu v United Servs Auto Ass'n*, 499 Mich 269, 274; 884 NW2d 257 (2016).

Lastly, whether a party has standing is a question of law reviewed de novo. *Mich Ass'n of Home Builders v City of Troy*, 504 Mich 204, 212; 934 NW2d 713 (2019). However, plaintiffs

bear the burden of showing they have standing. *American Family Ass'n of Mich v Mich State Univ Bd of Trustees*, 276 Mich App 42, 48; 739 NW2d 908 (2007).

## III. STRUCTURE CLASSIFICATION

Although not reached by the trial court, we conclude that defendant's structure violates the restriction against aboveground pools.

The primary goal in the interpretation of a contract is to honor the intent of the parties. *Klapp*, 468 Mich at 473. A contract must be construed to give effect to every word, clause, and phrase, and a construction that renders any part of the contract surplusage or nugatory should be avoided. *Id*. at 468. Contractual language is to be given its ordinary and plain meaning, *DeFrain v State Farm Mut Auto Ins Co*, 491 Mich 359, 367; 817 NW2d 504 (2012), unless defined in the contract, *Twichel v MIC Gen Ins Corp*, 469 Mich 524, 534; 676 NW2d 616 (2004). Contractual terms must be construed in context, *Vushaj v Farm Bureau Gen Ins Co of Mich*, 284 Mich App 513, 516; 773 NW2d 758 (2009), and interpreted to avoid absurd or unreasonable conditions or results, *Hastings Mut Ins Co v Safety King, Inc*, 286 Mich App 287, 297; 778 NW2d 275 (2009). A clear and unambiguous contract, which does not contravene public policy, will be enforced as written. *Farmers Ins Exch v Kurzmann*, 257 Mich App 412, 418; 668 NW2d 199 (2003).

Our courts generally enforce deed restrictions in respect of parties' freedom to contract. See *Bloomfield Estates Improvement Ass'n, Inc v City of Birmingham*, 479 Mich 206, 214; 737 NW2d 670 (2007). Courts should strictly construe ambiguous deed restrictions in favor of free use; however, courts will enforce unambiguous deed restrictions as written. *Thiel v Goyings*, 504 Mich 484, 496; 939 NW2d 152 (2019). When a term is not defined in the agreement, courts will give the term its commonly used meaning. *Bloomfield Estates Improvement Ass'n, Inc*, 479 Mich at 215.

Preliminarily, the trial court implied that the fact that defendant failed to seek and obtain approval before installing the structure was reason enough to grant summary disposition in favor of plaintiff, and declined to determine whether the swim spa was a hot tub or an aboveground pool. Seizing the trial court's implication, plaintiff argues on appeal that the failure to seek and obtain approval before installation is sufficient reason to affirm the trial court's ruling. However, plaintiff did not demand removal on the basis of defendant's failure to apply for approval before installation. Rather, it gave defendant an opportunity to apply for approval retroactively and informed defendant this approval was denied because "the pool as constructed does not comply with the requirements of the Declaration of Restrictions." Thus, the trial court's implied ruling that the failure to seek preapproval was a sufficient basis to grant summary disposition is irrelevant to review of the issues that defendant raises on appeal. We instead consider the classification of the swim spa as a pool, and plaintiff's standard of discretionary disapproval of the structure as inharmonious as the two distinct grounds on which the trial court's judgment can possibly be affirmed.

In *Thiel*, 504 Mich at 488, the defendants' neighbors insisted the defendants violated the subdivision's restrictive covenants against the installation of modular homes, and sought an order requiring the defendants to tear down the home. Specifically, the restrictive covenants of the subdivision association stated: " 'All residences shall be stick built on site and no . . . pre-

fabricated or modular home . . . will be erected on any of the Parcels unless provided for herein.' " *Id*. at 490. The trial court dismissed the case, finding the covenants "did not contemplate a home of the type built by Defendants," which combined modular components with on-site, stick-built construction. *Id*. at 488, 491 (quotation marks omitted). This Court reversed, reasoning the defendants' home unambiguously fit the commonly understood definition of "modular." *Id*. at 488-489.

On appeal of this Court's ruling, our Supreme Court reasoned:

Courts review restrictive covenants with a special focus on determining the restrictor's intent. We are not so much concerned with the rules of syntax or the strict letter of the words used as we are in arriving at the intention of the restrictor, if that can be gathered from the entire language of the instrument. We determine the intended meaning of the chosen language by reading the covenants as a whole rather than from isolated words and must construe the language with reference to the present and prospective use of property. And we enforce unambiguous restrictions as written. Thus, we consider challenges to restrictive covenants in a contextualized, case-by-case manner. [*Id*. at 496 (quotation marks and citations omitted).]

Applying this method, the Court concluded:

[T]he language of the restrictive covenants supports the trial court's finding that there is a distinction between a modular or prefabricated home and a site-built home with modular or prefabricated components. . . .

The Court of Appeals erred when it held that the defendants' home violated the unambiguous terms of the covenant and that "the only solution was to grant injunctive relief and order that the non-conforming home be removed." The panel found that this result was self-evident, given the dictionary definition of the word "modular." But the panel set up a straw man: it cited a definition of modular that all could agree upon and concluded that if the modular components used here fit that definition, then, *ipso facto*, the [defendants'] home was a modular home. This faulty reasoning allowed the panel to wrap up its analysis before it ever reached the parties' dispute: how to construe the term "modular home." . . .

There is nothing ambiguous about the terms "modular" or "home," or even "modular home." And we find that the fairest reading of the unambiguous terms of the restrictive covenants is to prohibit homes that are predominantly composed of modular components. The [defendants'] home is not a "modular home" as the restrictive covenants use the term. [*Id*. at 509-510 (citation omitted).]

Turning to the restriction in dispute in this case, the Declaration was made "in consideration of the mutual benefits to be derived by the undersigned, their successors and assigns, and all intending purchasers, and future owners of the various lots comprising The Subdivision." Looking to the "intention of the restrictor," and considering the question "in a contextualized, case-by-case manner," *Thiel*, 504 Mich at 496, it is of note that Article V of the Declaration sets out specific

restrictions in the sections leading up to Section 17, which include restrictions on signs and fences, for example.  Under Section 17, Subsection E, a catchall provision, the Committee is permitted to

> disapprove plans because of . . . design, proportions, shape, height, style, or appropriateness of the proposed improvement or alteration or because of any matter or thing, which in the reasonable judgment of the Committee, would render the proposed improvement or alteration inharmonious or out of keeping with . . . the improvements erected on other Lots in the Subdivision.

Logically, the preceding specific restrictions concern exterior improvements that would be a waste of effort to submit to the Committee because plaintiff already agreed they were "inharmonious" with the subdivision, as evidenced by the explicit prohibitions in the Declaration.

One of these restrictions is against "above ground swimming pools."  There is nothing ambiguous about the descriptor "aboveground," and defendant does not dispute that the swim spa is installed entirely aboveground.  Additionally, a swimming pool is simply "a pool suitable for swimming," especially "a tank (as of concrete or plastic) made for swimming."  Merriam-Webster.com Dictionary, *Swimming pool*, <https://www.merriam-webster.com/dictionary/swimming%20pool> (accessed August 6, 2024).  The manufacturer represents the swim spa in its marketing materials as "the perfect way to swim every day," and a training device in which the user swims, meeting the common usage of the term "swimming pool."

For insight on the intention of the restrictor, we can look to the catchall provision, outlining permissible reasons for the Committee to deny approval of an improvement.  Among these are "design, proportions, shape, height, and style," which are considerations about how a proposed structure would appear from the rest of the neighborhood.  In this case, the structure is noticeably larger than a standard hot tub, and thus more noticeable and obstructive within a wider view of the neighborhood.  The context of the Declaration illustrates this is the consideration at the heart of the intended purpose of the Committee.  Though defendant argues she intends to use the swim spa as a large hot tub, and while the manufacturer markets the product for this use as well, the Declaration provides no evidence it was concerned with prohibiting the *act* of swimming in the subdivision.  The intention of plaintiff in the aboveground pool restriction is to eliminate the obstruction of a standalone pool above ground level, and reading the restriction with this intention in mind indicates defendant's structure is prohibited by Declaration Article V, Section 9H.

## IV.  COMMITTEE DISCRETION

The Declaration clearly vested the Committee with discretion to approve or disapprove exterior improvements on the basis of harmoniousness with the subdivision.  Therefore, the trial court properly granted summary disposition, enforcing plaintiff's denial, which was made on the basis of this sufficiently clear standard.

Defendant offers JUSTICE VIVIANO's concurrence in *Thiel* to support her argument that an injunction ordering structure removal is not the only proper response to a restrictive-covenant violation.  JUSTICE VIVIANO found fault with the majority's analysis of the question because it relied on *Webb v Smith (After Second Remand)*, 224 Mich App 203, 211; 568 NW2d 378 (1997), which relied on *Cooper v Kovan*, 349 Mich 520; 84 NW2d 859 (1957).  *Thiel*, 504 Mich at 511-

512 (VIVIANO, J., concurring). *Cooper* incompletely referenced Corpus Juris Secundum, listing three exceptions to enforcement of valid restrictive covenants as "a) Technical violations and absence of substantial injury; (b) Changed conditions; [and] (c) Limitations and laches." *Cooper*, 349 Mich at 530, citing 26 CJS, Deeds, § 171. However, this treatise goes on to state:

> Restrictive covenants, to be enforceable in equity, must be reasonable. Further, they must not be vague or uncertain, nor may the right to relief be doubtful; and where a restrictive covenant is being used as a means of annoyance or oppression, equity may cancel it . . . . [*Thiel*, 504 Mich at 514, quoting 26 CJS, Deeds, § 171, p 1175.]

The issue concerning an alleged lack of standard goes to the principle presented in this extended citation of the treatise: a restrictive covenant must be reasonable, and not vague or uncertain, to be enforceable. Again, Section 17E of Article V of the Declaration states:

> The Committee may disapprove plans because of . . . any matter or thing, which in the reasonable judgment of the Committee, would render the proposed improvement or alteration inharmonious or out of keeping with the objectives of the Committee or with the improvements erected on other Lots in the Subdivision.

The section goes on to say that by accepting ownership of subdivision property, all owners acknowledge the primary purpose of the Committee is "to insure the proper and harmonious development of the Subdivision in order to maximize the aesthetic beauty of the Subdivision and its blending with the surrounding area." Further, the section explicitly states: "[T]he Committee . . . shall be deemed to have broad discretion in terms of determining what . . . structures or improvements will be permitted and are in keeping with the aesthetic beauty and desirability of the Subdivision." This contractual language is unambiguous in giving discretion to the Committee on decisions whether to approve exterior improvements, and it provides a standard—approval for structures that are in keeping with the harmonious nature and aesthetic beauty of the subdivision, as determined by the Committee.

The trial court found the Committee had, under the Declaration, clear authority to disapprove defendant's structure and enforce its restriction, and this not only aligns with the unambiguous language of the Declaration, but also the business judgment rule applicable to corporations. Our Supreme Court stated this rule as: "So long as the directors of a corporation control its affairs within the limits of the law, matters of business judgment and discretion are not subject to judicial review." *Reed v Burton*, 344 Mich 126, 131; 73 NW2d 333 (1955) (quotation marks and citation omitted). Because "[i]t is not the function of the court to manage a corporation nor to substitute its own judgment for that of the officers thereof," *id*. (quotation marks and citations omitted), there is no room for a court to second guess the Board's decision to accept the Committee's determination that the structure was unacceptable when clear contractual language established its authority to do so in pursuit of its directive to maintain a harmonious appearance of the neighborhood.

## V.  THE BOARD'S ALLEGED VIOLATIONS

Because there is no statutory law or contract provision requiring the Board to obtain approval to sue by a vote of the full membership, the Board's decision to pursue litigation is not void.  Additionally, plaintiff's failure to maintain the number of members on the Board and Committee as specified in the governing documents is not a substantial breach.

MCL 450.2304(3) of the Nonprofit Corporation Act, MCL 450.2101 *et seq*., states:

> Except as provided in the articles of incorporation or bylaws, each member of a corporation, regardless of class, is entitled to 1 vote on each matter submitted to a vote of members, unless the articles of incorporation or bylaws deny, limit, or otherwise prescribe the voting rights of any class of members.  The members and each affected class of members of a corporation organized on a membership basis, if any, shall adopt, amend, or repeal any bylaw denying, limiting, or otherwise prescribing the voting rights of any class of members.

However, MCL 450.2501(1) states, in pertinent part: "The business and affairs of a corporation shall be managed by or under the direction of its board, except as otherwise provided in this act or in its articles of incorporation."  MCL 450.2505(1)(b) establishes that three is the minimum number of members of such a board.

Defendant contends plaintiff violated its Bylaws and covenant, creating a lack of standing to sue defendant, in two ways: (1) by filing suit against defendant without obtaining approval by vote of the entire membership; and (2) by having one too few members on the Board and one too many members on the Committee.  Addressing the first argument, defendant cites *Tuscany Grove Ass'n v Peraino*, 311 Mich App 389, 391-392; 875 NW2d 234 (2015), in which the Board of Directors for a condominium association[1] filed an action against a co-owner to enforce its governing documents.  This Court concluded that the plaintiff lacked standing because it had not obtained a 66⅔ vote of its members before incurring expenses or legal fees with respect to litigation, in violation of explicit language in its bylaws.  *Id*. at 392, 397-398.

However, unlike the circumstances in *Tuscany Grove Ass'n*, there is nothing in plaintiff's Bylaws or the Nonprofit Corporation Act requiring a vote of the membership to approve litigation or litigation expenses.  Defendant argues a full-membership vote is the default required by the Nonprofit Corporation Act; however, MCL 450.2304(3) only states that "each member . . . is entitled to 1 vote on each matter *submitted to a vote of members*," (emphasis added).  The provision does not state that every matter, or even some subset of matters, must be submitted to a vote of the members.  Instead, the Nonprofit Corporation Act goes on to state: "The business and affairs of a corporation shall be managed by or under the direction of its board . . . ."  MCL 450.2501(1).  Defendant failed to identify any source of law or contract provision requiring plaintiff to put a decision to pursue restriction enforcement by litigation to the full membership.  The grant of

---

[1] The subdivision in this case is not a condominium complex and so is not subject to the Condominium Act, MCL 559.101 *et seq*.

summary disposition to plaintiff is not invalidated by the fact the Board made the decision to sue unilaterally in its role as the manager and director of the affairs of plaintiff.

Turning to defendant's argument concerning invalidation of plaintiff's actions because of the number of members on the Board and Committee, it is important to note the essence of what defendant is arguing is that plaintiff breached its governing documents, relieving defendant of her obligations under these agreements and invalidating plaintiff's enforcement actions. Taking a step back, to prove breach of contract a party must establish that "(1) there was a contract, (2) the other party breached the contract, and (3) the breach resulted in damages to the party claiming breach." *Bank of America, NA v First American Title Ins Co*, 499 Mich 74, 100; 878 NW2d 816 (2016). "The rule in Michigan is that one who first breaches a contract cannot maintain an action against the other contracting party for his subsequent breach or failure to perform." *Michaels v Amway Corp*, 206 Mich App 644, 650; 522 NW2d 703 (1994) (quotation marks and citations omitted). However, this rule of first breach only applies when the initial breach is substantial. *Id*.

A breach is substantial if it "effected such a change in essential operative elements of the contract that further performance by the other party is thereby rendered ineffective or impossible, such as the causing of a complete failure of consideration or the prevention of further performance by the other party." *McCarty v Mercury Metalcraft Co*, 372 Mich 567, 574; 127 NW2d 340 (1964) (citations omitted). This Court has also looked to factors used to define a "material" breach in determining if a first breach is substantial. See *Able Demolition, Inc v Pontiac*, 275 Mich App 577, 585; 739 NW2d 696 (2007). "In determining whether a breach is material, the court should consider whether the nonbreaching party obtained the benefit it reasonably expected to receive." *Omnicom of Mich v Giannetti Investment Co*, 221 Mich App 341, 348; 561 NW2d 138 (1997).[2] Further:

> Other considerations include the extent to which the injured party may be adequately compensated for damages for lack of complete performance, the extent to which the breaching party has partly performed, the comparative hardship on the breaching party in terminating the contract, the willfulness of the breaching party's conduct, and the greater or lesser uncertainty that the party failing to perform will perform the remainder of the contract. [*Id*.]

Defendant presents no argument to support her contention that plaintiff's violations of the governing document's Committee and Board membership number requirements was a substantial breach. The number of members in either body did not render defendant's compliance with plaintiff's governing documents "ineffective or impossible." *McCarty*, 372 Mich at 574. Further, defendant "obtained the benefit it reasonably expected to receive," *Omnicom of Mich*, 221 Mich App at 348, from the provisions establishing the Board and the Committee—a body to manage the business affairs of the association of which she was a member, and a body to "insure the proper and harmonious development of the Subdivision." Having eight instead of nine, or four instead of

---

[2] Although published opinions issued before November 1, 1990, are not strictly binding on this Court, MCR 7.215(J)(1), they are nevertheless considered precedent and entitled to greater deference than unpublished cases. *Tripp v Baker*, ___ Mich App ___, ___ n 1; ___ NW3d ___ (2023) (Docket No. 360960); slip op at 5 n 1.

-11-

three, members does not disrupt the accessibility of this benefit. Further, other appropriate considerations support the conclusion that the breach was not substantial, including: defendant has not argued any damages resulted from the incorrect number of members on either body; a high level of partial performance by plaintiff; the entirety of plaintiff's membership would face the hardship of having no management of the subdivision if the contract was terminated; a lack of evidence to support plaintiff's breach was willful; and a slightly incorrect number of Board and Committee numbers has no influence on whether plaintiff will perform the remainder of the contract. See *id*. Because plaintiff's incorrect membership number of either body was not a substantial breach of the governing documents, these circumstances do not invalidate plaintiff's enforcement actions.

## VI. INJUNCTION

Lastly, because the trial court recognized its discretion to fashion a lesser equitable remedy and appropriate factors support its equitable determination, the trial court did not abuse its discretion by issuing an injunction ordering the full removal of the structure instead of a lesser remedy.

Injunctive relief has been characterized as the "strong arm of equity," which should only be employed "with full conviction of its urgent necessity, necessity as to purpose and necessity as to parties." *Reed*, 344 Mich at 132. Injunctive relief is an extraordinary remedy, which should issue only when justice requires, *Pontiac Fire Fighters Union Local 376 v Pontiac*, 482 Mich 1, 8; 753 NW2d 595 (2008), and "there is no adequate remedy at law, and there is a real and imminent danger of irreparable injury," *Janet Travis, Inc v Preka Holdings, LLC*, 306 Mich App 266, 274; 856 NW2d 206 (2014). Economic injuries are generally not irreparable injuries. See *Mich AFSCME Council 25 v Woodhaven-Brownstown Sch Dist*, 293 Mich App 143, 149; 809 NW2d 444 (2011).

In *Dep't of Environmental Quality v Gomez*, 318 Mich App 1, 34; 896 NW2d 39 (2016), this Court explained that, in determining whether a trial court abused its discretion by issuing a permanent injunction, this Court considers:

> (a) the nature of the interest to be protected, (b) the relative adequacy to the plaintiff of injunction and of other remedies, (c) any unreasonable delay by the plaintiff in bringing suit, (d) any related misconduct on the part of the plaintiff, (e) the relative hardship likely to result to defendant if an injunction is granted and to plaintiff if it is denied, (f) the interests of third persons and of the public, and (g) the practicability of framing and enforcing the order or judgment. [Quotation marks and citation omitted.]

"Courts balance the benefit of an injunction to a requesting plaintiff against the damage and inconvenience to the defendant, and will grant an injunction if doing so is most consistent with justice and equity." *Janet Travis, Inc*, 306 Mich App at 274-275.

Turning to the nature of the injunctive relief in the instant case, it is important to remember that negative covenants are grounded in contract law. *Stuart*, 454 Mich at 210. Specific performance "rests in the discretion of the court, is based upon equitable principles, and, though it

-12-

may not be arbitrarily or capriciously refused, will not be granted except where the complaining party is clearly entitled thereto." *Harmon v Muirhead*, 247 Mich 614, 615; 226 NW 713 (1929). However, "[r]estrictions for residence purposes, if clearly established by proper instruments, are favored by definite public policy. The courts have long and vigorously enforced them by specific mandate." *Oosterhouse v Brummel*, 343 Mich 283, 287; 72 NW2d 6 (1955). Finally,

> "[r]estrictive covenants, to be enforceable in equity, must be reasonable. Further, they must not be vague or uncertain, nor may the right to relief be doubtful; and where a restrictive covenant is being used as a means of annoyance or oppression, equity may cancel it . . . . Equity will withhold its hand where . . . the consequences of enforcement would be inequitable . . . ." [*Thiel*, 504 Mich at 514 (VIVIANO, J., concurring), quoting 26 CJS, Deeds, § 171, p 1175.]

Considering the applicable factors for evaluating the trial court's discretion in granting the injunction, *Dep't of Environmental Quality*, 318 Mich App at 34, the interest to be protected is the property interest of the other members in the use of their property and the value of their individual properties. Plaintiff argues any remedy that allows the swim spa to remain in its aboveground configuration weakens the force of its restrictions throughout the subdivision, while defendant contends shielding the swim spa would be equally adequate as removal. However, shielding still presents view obstruction. Plaintiff notified defendant of its application requirements within days of receiving a complaint, and filed suit a mere three months after the complaint, constituting no unreasonable delay. No evidence of plaintiff's misconduct was presented, but the hardship to defendant of dismantling her costly structure is a strong factor in her favor. The hardship to plaintiff if the injunction request is denied is a weakening of its capability to enforce its restrictions in pursuit of the benefit of plaintiff's membership, including other individual members. The public interest of reliance in deed restrictions and property expectations is harmed by a denial of a plaintiff's request for an injunction. There is no concern with the practicability of framing and enforcing the order. Considering these circumstances as a whole, defendant's hardship of the loss of her investment in building the structure is the only factor weighing heavily against the injunction, and even this is not as strong as it may seem because the swim spa itself is a contained unit, which could potentially be installed inground or sold. With so many factors weighing in favor of removal, the trial court's grant of the permanent injunction requiring the removal of the structure falls within the range of reasonable and principled outcomes, and so is not an abuse of discretion. *Pirgu*, 499 Mich at 274.

Defendant's alternative argument is that the trial court abused its discretion by failing to exercise its discretion when called upon to do so. See *Rieth*, 230 Mich App at 348, 350. Specifically, defendant contends the trial court's statements such as, "You know, I hate to see her have to rip it down, but I don't think that there's any other choice," illustrate a failure to recognize it had discretion, which is itself an abuse. *Berry v Garrett*, 316 Mich App 37, 50; 890 NW2d 882 (2016). However, the trial court also stated: "[W]e sort of believe in judicial restraint and I feel like I shouldn't be dictating what happens in Rochester unless I have to. So, you know, it seems like the neighborhood should do what's good for the neighborhood if that's possible." Such statements display the trial court's awareness of its discretion to order a remedy less cumbersome than complete removal of the structure, and its order displays a clear decision not to do so. Importantly, an abdication of discretion does not occur merely because one of the parties made a request of the court and the court refused to act on the request. See *Kemerko Clawson, LLC v*

*RXIV Inc*, 269 Mich App 347, 353; 711 NW2d 801 (2005). The trial did not abuse its discretion by being aware of its option to order a lesser remedy and passing on it.

Affirmed.

/s/ Thomas C. Cameron
/s/ Kathleen Jansen
/s/ Brock A. Swartzle